STATE of Missouri, Respondent,

v.

Ronny Lee HALE, Appellant.

No. 55686.

Supreme Court of Missouri,
Division No. 1.

March 8, 1971.

---

John C. Danforth, Atty. Gen., Charles A. Blackmar, Asst. Atty. Gen., Jefferson City, for respondent.

Robert G. Duncan, Pierce, Duncan, Hill & Russell, Kansas City, for appellant.

LAURANCE M. HYDE, Special Commissioner.

Defendant was convicted of tampering with a motor vehicle in violation of § 560.-175(1), a felony under § 560.180(1), RSMo, V.A.M.S. The charge was tampering with a motor vehicle "by attaching a cable thereto and attempting to tow away said vehicle without the permission of the owner." Defendant was sentenced to two years' imprisonment in accordance with the jury's verdict and has appealed. We affirm.

Franklin R. Smith owned the Ford car involved. Smith worked a night shift for a manufacturing company and while driving home through North Kansas City after 1:30 a. m. was forced off the road to avoid another car. His car went into a ditch, which was muddy and he could not get it out so he walked home. About 4:30 a. m. the North Kansas City police received a report that someone was attempting to sell (steal?) parts from this car and two officers (Carter and Brandon) in separate cars went there. They found a steel cable attached to the front of the Ford underneath the bumper, running up under a Chevrolet on the road. Defendant and one McFarland were kneeling in front of the Chevrolet, apparently attempting to hook the cable to it. The officers asked the men what they were doing. Defendant said "they were attempting to pull the car out of the ditch for a friend." Asked who the friend was, defendant said "he didn't know the man's name" and stated "he had just met him a short time before at the Hudson Service Station on the north end of the Chouteau Bridge." Asked where he got the cable he said at the Hudson Service Station. Asked where he got the Chevrolet, defendant said he had rented it which later was found to be true. Defendant, although he said he was pulling the car out of the ditch with the permission of the owner, afterwards stated he did not know who the owner was. After defendant said he didn't know who the owner was or where he was, he was arrested and taken to the station. Defendant was advised of his rights after his arrest and made no further statements to the officers.

Before the trial, the court held a hearing on defendant's motion to suppress, claiming any statements to the officers were made after defendant was restrained from his liberty and the proceedings had reached an accusatory state, with no advice or warning as to his rights. Officer Carter said at the time defendant told them they were attempting to pull the car out of the ditch he was not intending to arrest him and had no reason to believe defendant had committed a crime at that time. He said: "I thought they were the owners of the car when I arrived." He said defendant was arrested and advised of his rights "after we had learned he obtained this cable from the Hudson Station and he did not know the owner of the car." Defendant made no statement to the officers after his arrest. Carter said they went there to check the report of the car being stripped but said: "I really didn't suspicion anyone of stripping the car because I could see

nothing they had stripped." He "was checking out the report"; and said he would not have allowed the men to go "without asking them a few questions."

Defendant claims error in overruling his motion to suppress and in allowing in evidence statements he made to the officers about not knowing who the owner of the Ford was, who or where his claimed friend was whom he said had asked him to pull the Ford out, where he got the cable and where he got the Chevrolet. Defendant relies on Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694; Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed. 2d 977; in which statements were made under custodial interrogation, and State v. Evans, Mo.Sup., 439 S.W.2d 170, in which the officers involved took the defendant in their car to a hospital to identify defendant's child burned in a fire he later admitted starting, and which the police already had information he had started. After an attempted Miranda warning, held insufficient, the defendant confessed he had started the fire and was then told he was placed under arrest. We held this was custodial investigation because defendant had been deprived of his freedom when the officers put him in their car, took him to the scene of the fire and to the hospital, after they had reasonable grounds for arresting him without a warrant. In this case, the officers were checking a report about someone stripping a car, not pulling one out of a ditch, and there was no custody taken of defendants or actual restraint until they were arrested. The situation is more like that in State v. Bradford, Mo.Sup., 434 S.W.2d 497, where officers saw a car with two men in it at a closed shopping center and decided to check it out. In that case (434 S.W.2d 1. c. 498) Bradford, while still in the car "made two or three statements to different people that owned the car because he and the other guy either one couldn't make an identification of them owning the car, and finally admitted that they took the car from some fellow in Missouri." After that statement Bradford and his companion were arrested.

It was claimed these admissions were elicited "during custodial interrogation" without the required warning. We held this was not custodial interrogation but proper precustody inquiries, investigative and noncoercive in nature and justified by the circumstances as a legitimate police practice, relying on Schnepp v. State, 84 Nev. 120, 437 P.2d 84; Allen v. United States, 129 U.S.App.D.C. 61, 390 F.2d 476; People v. P., 21 N.Y.2d 1, 286 N.Y.S.2d 225, 233 N.E.2d 255. Miranda, 384 U.S. 1. c. 477, 86 S.Ct. 1. c. 1629, 16 L.Ed.2d 1. c. 725, says: "General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. It is an act of responsible citizenship for individuals to give whatever information they may have to aid in law enforcement. In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present." Miranda also said, 384 U.S. 1. c. 444, 86 S.Ct. 1612: "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." See also Lowe v. United States, 9th Cir., 407 F. 2d 1391, 1396; and Williams v. United States, 9th Cir., 381 F.2d 20, 22, holding an unexpressed intention to detain an individual does not amount to "in custody" questioning. See also 31 A.L.R.3rd 565, annotation § 9, § 12. In State v. Sampson, Mo.Sup., 408 S.W.2d 84, 86, cited by defendant, the defendant therein was forceably restrained when the officer involved "grabbed his arm" as he tried to get a knife, and therefore was held arrested. There was no physical restraint in this case but only proper precustody inquiries and we hold there was no error in overruling defendant' motion to suppress and admitting in evidence the officers' testimony concerning his statements.

Defendant also contends that § 560.175 (1) making it an offense to tamper with a motor vehicle (a graded felony under § 560.180(1)) is too vague and indefinite to

advise defendant of the nature of the offense charged and does not set forth sufficient standards of guilt so that he was denied due process of law under the Sixth and Fourteenth Amendments to the United States Constitution. Defendant also says the evidence did not establish the commission of the offense of felonious tampering and at most only established the commission of a misdemeanor. § 560.180(2) and § 560.175(2), (3), (4), specifying certain acts as misdemeanors.

Section 560.175(1) provides: "No person shall drive, operate, use or tamper with a motor vehicle or trailer without the permission of the owner thereof." Part 2 thereof applies to specified acts in or around a motor vehicle which are less than driving, operating or using it. The charge in this case was that defendant "then and there wilfully and feloniously did tamper with a certain motor vehicle * * * [describing it] * .* * by attaching a cable thereto and attempting to tow away said vehicle without the permission of the owner." This charges violation of § 560.180(1).

■ As to vagueness, we have said that in some situations "meaning can better be stated by providing a general principle for conduct than by undertaking to detail every possible act to be prohibited." State v. Katz Drug Company, Mo.Sup., 352 S.W.2d 678, 683, citing U. S. Supreme Court decisions supporting this principle. The leading case of State v. Ridinger, 364 Mo. 684, 266 S.W.2d 626, 42 A.L.R.2d 617, fully considered this matter, and pointing out the punishment provided ranged from fine or jail sentence to penitentiary sentence, said, 266 S.W.2d 1. c. 630: "To 'tamper' with a motor vehicle may be many things. Some may be serious, some clearly not serious; some major and some minor. Under the present statute whether the act done is 'tampering' is a judicial question." The tampering in that case was removing a wheel and tire. In State v. Wood, Mo.Sup., 266 S.W.2d 632, removal of gasoline and a license plate from a motor vehicle was held

to be tampering. An annotation to Ridinger, 42 A.L.R.2d 624, states: "acts done to, in, or on the motor vehicle, such, for example, as taking parts therefrom, or articles in or on the car, trespassing therein, damaging it, etc." have been considered as tampering. As to damaging parts without taking them, see Acton v. State, 104 Tex.Cr. R. 75, 282 S.W. 805. The term "tamper" has frequently been used in statutes. "[T]he word 'tamper,' in a criminal statute at least, has the limited meaning of improper interference." Keefe v. Donnell, 92 Me. 151, 42 A. 345, 348. "Tamper" has been used in federal statutes making it an offense to tamper with the motive power or instrumentalities of navigation of certain vessels. See Giugni v. United States, 1st Cir., 127 F. 2d 786, 790; Bersio v. United States, 4th Cir., 124 F.2d 310, 314 (holding "tamper" means "any sort of improper interference with the machinery") ; see other cases cited in 41 Words and Phrases 147, and State v. Ridinger, 266 S.W.2d 1. c. 630, which stated a Webster Dictionary definition of "tamper" as "to interfere improperly."

■ Under § 560.175(2) certain acts of trespassing in a car or around it are made a misdemeanor. Defendant claims his acts should be held to be only a misdemeanor under § 560.175(2). These specified acts do not include attaching a cable to a car and another vehicle to haul the car away, which the evidence plainly shows was what defendant was trying to do. If taking parts from a car or damaging parts is tampering then certainly towing away the car would be and only the arrival of the officers stopped this. Although defendant had not yet moved the car, the sitution is like that in State v. McLarty, Mo.Sup., 414 S.W.2d 315, where arrival of police prevented removal of an air conditioner (partly disconnected by the defendant) from a car; and we held the jury could reasonably find defendant guilty of tampering with the automobile. See also State v. Edmonson, Mo.Sup., 371 S.W.2d 273, where we held steering a car being pushed by another car constituted "driving, using and operating" under this

statute. It clearly appears that defendant did not have the owner's consent to move this car away but was trying to do so. We hold the acts defendant was doing amounted to tampering in violation of the felony section of the statute.

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by LAURANCE M. HYDE, Special Commissioner, is adopted as the opinion of the court.

BARDGETT, J., and HENLEY, Alternate Judge, concur.

SEILER, P. J., concurs in result.

HOLMAN, J., not sitting.