**STATE of Missouri, Respondent,**

v.

**James Phillip LAWRENCE, Appellant.**

No. 39288.

Missouri Court of Appeals,
St. Louis District,
Division One.

May 30, 1978.

Motion for Rehearing and/or Transfer
Denied July 14, 1978.

Application to Transfer Denied
Sept. 12, 1978.

London, Greenberg & Fleming, Lawrence J. Fleming, Thomas F. Flynn, St. Louis, for appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, George A. Peach, Circuit Atty., Thomas E. Dittmeier, St. Louis, for respondent.

SMITH, Judge.

Defendant appeals from his conviction by a jury of manslaughter and assault with intent to kill without malice and the resultant two year consecutive terms of imprisonment. We affirm.

On appeal defendant challenges a portion of the closing argument of the state and the failure of the trial court to give a defense

of habitation instruction. Daniel Loehr and Laird McLane were at McLane's house around midnight on August 20, 1976. They were drinking beer and sniffing glue. About 2 a. m. they walked down the alley near McLane's house to a point near defendant's residence. Loehr and McLane and defendant and his brother got into an argument. We need not set forth in detail the varying testimony of who started the argument, what was said and in what sequence events occurred. At some point in the argument defendant went into his house and got his shotgun. Loehr and McLane made some attempt to come through the gate into the Lawrence yard and toward the Lawrences who were on the porch. Defendant fired two shots from the shotgun. McLane was killed, Loehr was injured. Police were called and officer Hollifield arrived at the scene. Loehr accused defendant of having shot McLane and himself. Hollifield asked defendant what happened, to which defendant replied he didn't know but there was a body in his yard and would the policeman remove it. Defendant was then placed under arrest, given his *Miranda* rights and his shotgun was seized. Some further questions were posed to the police officer during his testimony concerning defendant's failure to make further statements. It was unclear whether these questions were directed to defendant's silence prior to arrest or afterwards. Objection was made and the trial court indicated its intention to grant the requested mistrial. Defendant then withdrew his request for mistrial and requested instead a cautionary instruction that the jury was to disregard the questions and answers concerning defendant's silence after his arrest inasmuch as he had a right to refuse to make any statement at that time. This instruction was given. In argument the prosecutor made the following statements:

"MR. DITTMEIER: Ladies and gentlemen, you know from common sense, you know how people react and somebody acts to protect their life. They have committed the ultimate act. They have killed someone. They don't tell the policeman, "Hey, these guys were coming in

the yard. They were trying to get me. Look around him. There's a gun there." MR. FLEMING: Objection, your Honor, to this line of argument as a comment on his refusal to make a statement. THE COURT: Overruled at this stage, before arrest. MR. DITTMEIER: He didn't tell the police that. Loehr was pointing to him and telling the police what happened. All he said was, "I know there's a body in the back yard." Lawrence says the policeman is lying about that. He says Loehr is lying. He said everybody is lying but him and his brother. That policeman had no reason to lie in this case. He told you exactly what he said. But if you want to assume for one minute that before he was arrested what he said was true; what did he tell you on the stand? He told you that he told him, "I shot him and the gun is inside." Did you say anything else to him?" "No." That is not consistent with having killed somebody. MR. FLEMING: I object on the same grounds as previously stated. THE COURT: Overruled. MR. DITTMEIER: Ladies and gentlemen, you have heard this evidence. I think you've got a pretty good idea of what happened out there. There was an argument going on."

■ Defendant contends that the foregoing was improper for two reasons i. e. the argument does not restrict itself to silence before the arrest and if it does the argument was improper because defendant was actually "in custody" when the police officer asked him what happened. Defendant raises no question of the propriety of the prosecutor's statement except as it relates to his fifth amendment right to silence during or after his arrest. We do not find the statement to have been improper. The prosecutor and the judge both made it clear that the failure to make an exculpatory statement related only to the period prior to arrest. The court had earlier cautioned the jury, at defendant's request, that no obligation existed on the part of defendant during or after his arrest to make any statement.

Under the circumstances we find no indication that the statement referred to post-arrest silence or that a jury would believe it did.

■ We also reject defendant's contention that he was in custody at the time of the question, answer, and silence referred to. The failure to make exculpatory statements under circumstances where only a guilty party would remain silent is admissible as a tacit admission. Such silence may not be shown if it occurred while an arrest is being made or after arrest, or when defendant is in custody. *State v. Butler*, 512 S.W.2d 466 (Mo.App.1974) [1, 3]. Defendant had not been placed under arrest when the police officer first made an inquiry. The police officer was newly-arrived on the scene and his question was of a generally investigatory nature. Loehr had stated that defendant had shot McLane. The officer simply asked defendant what happened. Defendant was sitting on his own porch, only the one police officer was present and none of the pressures of a custodial interrogation were present. The facts do not bring this inquiry within the facts or the rationale of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *See, State v. Hale*, 463 S.W.2d 869 (Mo. 1971); *State v. Williams*, 522 S.W.2d 641 (Mo.App.1975). Nor does the police officer's admitted, but not expressed, intention not to let anyone leave the scene mean that defendant was in custody or deprived of his freedom of action in any significant way. *See, State v. Hale, supra* [1].

■ The trial court gave an instruction on self-defense, but refused to give an instruction on defense of habitation. We find no error as the evidence did not support such a defense. The defense of habitation apparently arose as an exemption to the common law duty to retreat when attacked, if feasible, before one was justified in taking a life. Under certain circumstances one is justified in killing to prevent an entry to the home or dwelling. *State v. Brookshire*, 353 S.W.2d 681 (Mo.1962) [23]. This attempted entry occurs at the time when and the place where the intruder seeks to cross

the protective barrier of the house. *State v. Brookshire, supra* [24]; *State v. Hunter,* 444 S.W.2d 392 (Mo.1969); *State v. Kizer,* 360 Mo. 744, 230 S.W.2d 690 (1950); *State v. Shiles,* 188 S.W.2d 7 (Mo.1945). Here the defendant was on the back porch when he fired the shotgun. The victims were at most just inside the fence in the backyard. There is no evidence they intended to enter the house. We find no case in which the mere breaking of the curtilage is sufficient to support a defense of habitation. The instructions on that defense were properly refused.

Judgment affirmed.

CLEMENS, P. J., and McMILLIAN, J., concur.