STATE of Missouri, Respondent,

v.

John Alan BRADLEY, Appellant.

No. 46660.

Missouri Court of Appeals,
Eastern District,
Northern Division.

April 17, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 17, 1984.

Application to Transfer Denied
June 19, 1984.

Daniel P. Reardon, Jr., St. Louis, for appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, for respondent.

REINHARD, Judge.

Defendant was convicted in a court-tried case of four counts of manslaughter by culpable negligence in the operation of a motor vehicle, a violation of § 565.005, RSMo. 1978. He was sentenced to consecutive two year terms of imprisonment on each of the four counts. Defendant appeals. We affirm.

Shortly before midnight on August 23, 1980, an accident occurred on U.S. Highway 40 in St. Charles County. An automobile driven by defendant collided head-on with a vehicle driven by Douglas Broeker. All four passengers of the two cars died as a result of this accident.

Highway 40, in the area where the collision occurred, is a divided four lane highway with a grass median separating the westbound and eastbound lanes. The separation at the point of the accident was approximately twenty-five yards. High-

way 40, furthermore, is a "limited access" highway; with the exception of some private roads which allow direct entrance onto the highway, access is via entrance and exit ramps, which are marked with warning signs for those travelling in the wrong direction. The accident occurred between the Highway 94 intersection and the Highway 40 weigh station—approximately six-tenths of a mile east of the intersection. In this vicinity, the terrain contains numerous hills and valleys, which might be described as short and choppy.

Immediately prior to the accident, the defendant was observed driving his vehicle eastbound in the westbound lanes of Highway 40. Defendant and his passenger were travelling in the left-hand (passing) lane of the westbound lanes. As he drove, defendant stayed steadily in the left-hand lane. One witness was a passenger in a vehicle travelling east in the eastbound lanes. He testified that he first saw defendant's vehicle when the vehicle was east of the Highway 94 intersection and directly in front of the exit ramp. Although his memory was vague, he believed that he saw at least two vehicles swerve to avoid collision with defendant. He said for a period of possibly 25 seconds, his vehicle was parallel to defendant's and the driver of his vehicle honked its horn and flashed its lights in an effort to sound a warning. The driver and passenger of another automobile also testified that they had passed the Broeker vehicle just prior to the accident and swerved off the road to avoid collision with defendant.

Douglas Broeker was driving west on Highway 40 with three passengers in his automobile. Broeker had passed a vehicle and therefore was in the passing lane when he reached the crest of a hill and saw the headlights from defendant's oncoming car. There was no time for evasive action. The two cars collided head-on; only the drivers survived.

Policemen, paramedics and firemen responded. The first officer on the scene was Deputy Sheriff Clark. He observed Broeker's automobile sitting in the median at a ninety degree angle to the highway. Defendant's vehicle was sitting crossways on the highway almost directly facing Broeker's car.

Shortly thereafter Officer Davis arrived at the scene. He first approached Broeker's vehicle. Davis checked the passenger for a pulse and found none. He attempted to extricate the passenger's body from the car but was unable to do so. He then proceeded to defendant's automobile where he checked the passenger's pulse and found none. At this time, he noticed beer cans in the car and spilled beer in the vehicle. The odor of the alcoholic beverage permeated the car interior. A beer can was later found crushed between the passenger's waist and the dashboard. Davis walked around the car to the driver's side and spoke to the defendant, who had been badly injured. Davis smelled alcohol on defendant's person and on his breath. He asked defendant if he had been drinking, to which the defendant replied, "Yeah, a lot." Davis asked where and defendant answered, "all over." The state did not adduce evidence of the alcoholic content of defendant's blood.

On appeal, defendant raises two points. He challenges the sufficiency of the evidence to convict him of manslaughter and the admissibility of his statement to police at the accident scene. In reviewing this matter, our function is not to weigh the evidence, but rather, to determine whether the evidence is sufficient to support the conviction. *State v. Story*, 646 S.W.2d 68, 72 (Mo. banc. 1983); *State v. Devall*, 654 S.W.2d 172, 175 (Mo.App.1983). We consider the evidence in the light most favorable to the verdict, giving the state the benefit of all favorable inferences that can be drawn from the evidence. *State v. Overkamp*, 646 S.W.2d 733, 736 (Mo.1983). We disregard all evidence to the contrary and resolve all conflicts in evidence in favor of the verdict. *State v. Bextermueller*, 643 S.W.2d 292, 293 (Mo.App.1983).

Defendant was charged with manslaughter under § 565.005, RSMo. 1978, which provides: "Every killing of a human being

by the act, procurement or culpable negligence of another, not herein declared to be murder or excusable or justifiable homicide, shall be deemed manslaughter." "The rule is well established in Missouri that criminal culpable negligence is 'something more than ordinary, commonlaw or actionable negligence. The culpability necessary to support a manslaughter charge must be so great as to indicate a reckless or utter disregard for human life.' " *State v. Brown,* 637 S.W.2d 395, 395 (Mo.App. 1982), *quoting State v. Schneiders,* 137 S.W.2d 439 (Mo.1940).

■ Defendant contends that his conduct does not amount to culpable negligence. The fact that defendant was driving on the wrong side of the road on a limited access highway may show negligence on his part. However, standing alone it cannot warrant the conclusion that defendant acted in utter disregard of others, particularly since the accident occurred at night, when visibility was limited. Moreover, defendant's actions in steadfastly maintaining his course in the passing lane could be viewed as consistent with one operating under the mistaken notion that he was driving on the right hand side of two lane highway.

■ Likewise, the fact that defendant had near misses prior to the fatal collision, while of probative value, cannot alone be considered to amount to culpable negligence, in light of the temporal proximity of the near misses and the collision.

■ Nor is the presence of open beer cans, spilled beer and the accompanying odor of an alcoholic beverage in defendant's car alone enough. While these circumstances give rise to an inference that defendant had been drinking when he is alone in the vehicle, *See State v. Carter,* 451 S.W.2d 340, 343 (Mo.1970), here there was a passenger present in defendant's automobile. Indeed, a beer can was found crushed between her body and the dashboard.

We believe the sufficiency of the evidence in the present case turns on the admissibility of defendant's statement to police at the accident scene prior to his being advised of his *Miranda* rights.[1] If inadmissible, the evidence is insufficient to support his manslaughter conviction. Defendant contends that his statements to Officer Davis concerning his prior consumption of alcohol were inadmissible because they were made without first receiving *Miranda* warnings.

■ An accused must be advised of his constitutional rights before being subject to a custodial interrogation. *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). A custodial interrogation exists when police initiate questioning after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. *Id.*

■ There exists no clear-cut rule for determining when a custodial interrogation begins, which in turn determines when *Miranda* warnings must be given. *State v. Calmese,* 628 S.W.2d 382, 385 (Mo.App. 1982); *State v. Williams,* 522 S.W.2d 641, 644 (Mo.App.1975). Factors considered to determine when an interrogation becomes custodial include whether there was probable cause to arrest the accused, whether the investigation at the time of interrogation had focused on the accused, and the subjective intent of the police officer. *Id.* Applying these standards, we find that defendant's statements were not the product

1. In *State v. Neal,* 476 S.W.2d 547, 553 (Mo. banc 1972), our Supreme Court held that "Miranda warnings need not be given as a prerequisite to testimony as to admissions made to investigative officers by persons involved in" misdemeanor motor vehicle offenses, regardless of whether the questions are asked before or after arrest. The court specifically restricted its ruling to "only those misdemeanor offenses arising

from the operation of a motor vehicle." 476 S.W.2d at 553.

In the present case, the only charge lodged against defendant was that for which he was convicted, namely, the felony of manslaughter. § 565.005, RSMo. 1978. Therefore *Neal* is not controlling. *See State v. Schwendt,* 645 S.W.2d 385, 386–87 (Mo.App.1983).

of a custodial interrogation and thus, defendant was not entitled to *Miranda* warnings before making these statements.

At the time Officer Davis arrived at the scene of the accident, both automobiles were at 90 degree angles to the flow of traffic. Davis had spoken to no witnesses concerning the cause of the accident prior to his questioning of the defendant. Although there may have been reasonable grounds to conclude a crime had been committed, there was no basis for Davis to conclude that defendant was at fault. Therefore, the investigation had not yet focused on defendant. Davis testified to the effect that had the defendant been able and attempted to leave, he would have been placed under arrest. It is not clear whether this decision would have been reached before or after questioning the defendant. Davis' unexpressed intent, however, to not allow the defendant to leave is not determinative. *State v. Lawrence,* 569 S.W.2d 263, 265 (Mo.App.1978). A mere suspicion in the officer's mind was not enough to make the questioning custodial. *State v. Pierce,* 556 S.W.2d 216, 217 (Mo.App.1977). *People v. Kenning,* 110 Ill.App.3d 679, 66 Ill.Dec. 424, 442 N.E.2d 1337, 1340 (1982).

The circumstances of this case indicate that the questioning of defendant at the accident scene was non-custodial in nature. Officer Davis had just arrived; his inquiry came in the process of his general on-the-scene investigation. *State v. Pierce,* 556 S.W.2d at 218. Since the questioning had not centered on defendant, the inquiry was still of an investigatory, not accusatory, nature. Therefore, defendant was not entitled to *Miranda* warnings prior to making these statements and they could properly be used against him.

Therefore, from defendant's own admission that he had been drinking "a lot" "all over the place," the officer's testimony of the strong odor of alcohol on his breath, and the presence of beer cans found in his car, it can be inferred that defendant had been drinking heavily. Heavy drinking alone will not support a manslaughter conviction. *State v. Carter,* 451 S.W.2d at 343. However, the evidence of heavy drinking, considered in conjunction with the other evidence, is sufficient to establish a case of manslaughter.

Affirmed.

DOWD, C.J., and CRIST and PUDLOWSKI, JJ., concur.