In the Matter of the WELFARE OF W.A.H., Child.

No. C5–01–1174.

Court of Appeals of Minnesota.

March 26, 2002.

words," we reverse his adjudications on those counts and remand to the trial court for a determination of the impact of our decision on the disposition of appellant's case.

John M. Stuart, State Public Defender, Charlann Winking, Assistant Public Defender, Minneapolis, for appellant.

Mike Hatch, Attorney General, St. Paul; and David M. Olin, Pennington County Attorney, Alan G. Rogalla, Assistant County Attorney, Thief River Falls, for respondent.

Considered and decided by CRIPPEN, Presiding Judge, PETERSON, Judge, and HALBROOKS, Judge.

## OPINION

HALBROOKS, Judge.

Appellant W.A.H. challenges his adjudication of delinquency for tampering with a motor vehicle, second-degree assault, and disorderly conduct. He contends that (1) the evidence is insufficient to prove that he tampered with a vehicle or committed an assault when he brandished a knife while being chased, and (2) his adjudication of disorderly conduct violates the First Amendment because the record does not establish that his language amounted to "fighting words." Because we find that the evidence supports appellant's adjudication of second-degree assault, we affirm on that count. But because we conclude that appellant's conduct did not constitute "tampering" with a vehicle and that his language did not amount to "fighting

## FACTS

On the evening of March 15, 2001, Kevin Binkley was parked outside his Thief River Falls apartment, talking on his cellular phone, when he saw 16 year old appellant W.A.H. walk up to the parked vehicle owned by his friend, Benjamin Nentri. Binkley watched appellant as appellant looked inside the vehicle with a flashlight and pulled on the car door handle. At that point, Binkley got out of his vehicle and yelled at appellant, who ran away.

Binkley went into his apartment and told another friend, Ryan Rolloff, what had happened. The two men decided to go look for appellant. When they caught up to appellant, who was on foot, they jumped out of the vehicle and yelled at appellant to stop. Appellant continued running, with Rolloff chasing him down an alley, while Binkley got back in the vehicle and attempted to cut off appellant.

During the chase, appellant stopped and started running again three or four times, each time threatening Rolloff with a knife. Once appellant was trapped between Rolloff and Binkley, Rolloff was able to forcibly take the knife away from him.

Binkley and Rolloff restrained appellant and walked him to a nearby house to call the police. Appellant began yelling that he was being attacked with a knife and that Rolloff and Binkley were going to beat him up. While waiting for the police to arrive, appellant continued to yell, using frequent obscenities.

Appellant was charged with tampering with a vehicle under Minn.Stat. § 609.546(2) (2000), second-degree assault

under Minn.Stat. § 609.222 (2000), and disorderly conduct under Minn.Stat. § 609.72, subd. 1(3) (2000). Appellant filed a notice of a claim of self-defense.

Following a bench trial, the trial court adjudicated appellant delinquent on all charges. Appellant was placed on indefinite probation and committed to the Commissioner of Corrections at MCF–Red Wing. This appeal follows.

## ISSUES

1. Does appellant's conduct constitute "tampering" with a motor vehicle under Minn.Stat. § 609.546(2) (2000)?

2. Was there sufficient evidence to sustain appellant's adjudication of delinquency for second-degree assault?

3. Does appellant's adjudication of delinquency for disorderly conduct violate the First Amendment?

## ANALYSIS

### 1. Does appellant's conduct constitute "tampering" with a motor vehicle?

A person who intentionally "tampers with or enters into or on a motor vehicle without the owner's permission" is guilty of a misdemeanor under Minn. Stat. § 609.546(2) (2000). The trial court concluded that appellant "tampered" with Nentri's car by "pulling on the door handle, without [the owner's] consent." Appellant argues that this conduct is insufficient under the statute, because "tampering" requires some alteration, improper change, or actual trespass to a car.

■ Whether the trial court properly interpreted a statute is a question of law, which this court reviews de novo. *State v. Murphy*, 545 N.W.2d 909, 914 (Minn.1996). This is a case of first impression, as neither the legislature nor the Minnesota

courts have defined the phrase "tampers with" as it is used in Minn.Stat. § 609.546(2).

Black's Law Dictionary defines "tamper" as "to meddle so as to alter (a thing); esp., to make changes that are illegal, corrupting, or perverting" or "to interfere improperly; to meddle." *Black's Law Dictionary* 1468 (7th ed.1999). Similarly, the American Heritage Dictionary defines "tamper" as "to interfere in a harmful manner," "to tinker with rashly or foolishly," or "to engage in improper or secret dealings, as in an effort to influence." *The American Heritage Dictionary* 1832 (3d ed.1992). While these definitions are helpful in providing a general understanding of the term, it is necessary for us to determine the specific meaning of the phrase in the context of the statute. For assistance, we look to the legislature's use of the term "tampering" in other statutes as well as how other jurisdictions have interpreted similar laws.

Our legislature has defined "tampering" in at least three other statutes. In prohibiting tampering with utility meters, the legislature defined "tampering" as "damaging, altering, adjusting, or obstructing." Minn.Stat. § 325E.026, subd. 1(b) (2000). Similarly, when prohibiting tampering with a fire alarm system, it defined "tampering" as "to intentionally disable, alter, or change." Minn.Stat. § 609.686, subd. 3 (2000). Finally, the legislature referred to "tampering with a witness" when one "intentionally prevents or dissuades or intentionally attempts to prevent or dissuade," "intentionally coerces or attempts to coerce," or "intentionally causes injury or threatens to cause injury." Minn.Stat. § 609.498, subd. 1(a)-(c) (2000). Each of these definitions of "tampering" focuses on prohibiting conduct that results in change or alteration. Given this common thread, it seems likely that the legislature intend-

ed the same emphasis to apply to the vehicle-tampering statute.

It is also instructive to survey courts from other states to ascertain how they have interpreted their own, similar statutes. In *State v. Arnett*, 168 N.W.2d 807 (Iowa 1969), the Iowa Supreme Court interpreted a statute, currently found at Iowa Code § 321.78 (1997), that provides:

> Any person who either individually or in association with one or more other persons willfully injures or tampers with any vehicle or breaks or removes any part or parts of or from a vehicle without the consent of the owner is guilty of a simple misdemeanor.

In *Arnett*, a witness observed the two defendants "messing around with the top" of a vehicle and then saw one go inside the vehicle while the other remained "alongside of the car * * * working with his hands." 168 N.W.2d at 807–08. When the defendants were arrested, the police found no tools in their possession and the vehicle had not been altered or changed. *Id.* at 808. On appeal, the court examined several other jurisdictions and authorities and found that "[t]ampering has been defined as the making of unauthorized alterations or changes." *Id.* Because there was no evidence of a change or alteration, the court reversed the defendants' convictions. *Id.*

Likewise, in *Brown v. State*, 546 P.2d 1023 (Okla.Crim.App.1976), the Oklahoma Court of Criminal Appeals interpreted a statute, now codified at Okla. Stat. Ann. tit. 47, § 4–104(a) (West 2000), that provides:

> A person, who, with intent and without right to do so, injures or tampers with any vehicle * * * or in any other manner damages any part or portion of said vehicle * * * or any accessories, appurtenance or attachments thereto is guilty of a misdemeanor.

In *Brown*, one defendant raised the hood of the vehicle and placed his hand on the carburetor while the other defendant entered the vehicle and positioned himself across the front seat. 546 P.2d at 1024. But before they "could loosen a bolt or make any unauthorized physical alteration of the vehicle," both defendants were apprehended. *Id.* at 1026. Following a conviction, the appellate court examined legislative intent and concluded that "tamper" required an unauthorized physical alteration or change, not merely a simple trespass. *Id.* Because there was no evidence that either defendant physically altered the vehicle, the court reversed the convictions. *Id.*

Finally, in *State v. Hale*, 463 S.W.2d 869 (Mo.1971), the Missouri Supreme Court interpreted a statute which provided, "No person shall drive, operate, use or tamper with a motor vehicle or trailer without permission of the owner thereof." *Id.* at 872 (interpreting predecessor statute to Mo. Ann. Stat. § 569.090, subd. 1 (West 2000)). In *Hale*, the police found the defendant and another person hooking a tow cable to a stranded car in an attempt to tow it away. *Hale*, 463 S.W.2d at 870. After determining that the defendant had no authority to do so, the police arrested him and he was convicted of tampering with a motor vehicle. *Id.* On appeal, the court reviewed several cases and held that "tampering" occurred when the vehicle was either altered or changed or substantial steps were taken to do so. *Id.* at 872. Although the defendant had not yet altered or changed the vehicle, the court held he had clearly taken steps to do so and was thwarted only by the arrival of the police. *Id.* As a result, the conviction was affirmed. *Id.* at 873.

In addition to the decisions of courts from other jurisdictions, there are states with similar laws that inherently provide

meaning to the term "tampering" by articulating the purpose underlying the act. For example, a number of states prohibit "tampering with a vehicle" if done "for the purpose of injuring, defacing or destroying the vehicle, or temporarily or permanently preventing its useful operation." Idaho Code § 49–229 (2000). *See, e.g.,* Cal. Veh. Code § 10852 (West 2000); Del.Code Ann. tit. 21, § 6701 (1995); Nev.Rev.Stat. § 205.274 (2001).

Based on our analysis, we are persuaded that the phrase "tampers with," as used in Minn.Stat. § 609.546(2), requires that an individual engage in conduct that results in some degree of change or alteration to, or substantial interference with a vehicle. This definition is consistent with our legislature's use of the term "tamper" in other statutes and seems to address the conduct that the legislature is seeking to prohibit in the context of motor vehicles. As applied to this record, we find that the evidence is insufficient to establish that appellant tampered with Nentri's vehicle when he merely looked inside the car with a flashlight and pulled on the car door handle. Whether or not appellant's actions, if allowed to continue, might have escalated to effect some change to or substantial interference with the vehicle, this conduct did not. We, therefore, reverse the adjudication of delinquency on this count.

**2. Is there sufficient evidence to sustain appellant's adjudication of delinquency for second-degree assault?**

Appellant argues that the evidence is insufficient to support his adjudication of second-degree assault because the state failed to prove beyond a reasonable doubt that he was not acting in self-defense. When reviewing a challenge to the sufficiency of the evidence, this court examines the record and determines if the evidence, viewed in the light most favorable to the conviction, is sufficient to sustain the fact-finder's conclusions. *State v. Webb,* 440 N.W.2d 426, 430 (Minn.1989). We will not reverse a decision if the fact-finder, acting with proper respect for the principles of presumed innocence and proof beyond a reasonable doubt, could have reasonably found as it did. *State v. Alton,* 432 N.W.2d 754, 756 (Minn.1988).

To prove self-defense, a defendant must show that (1) he was not the original aggressor and did not provoke the other party, (2) he actually and honestly believed that he was in imminent danger of death or great bodily harm and that the danger could be averted only by the actions taken, (3) he was reasonable in this belief, and (4) there was no reasonable possibility that he could retreat to avoid the danger. *State v. Basting,* 572 N.W.2d 281, 285 (Minn.1997). Once the defense is raised, the state must disprove at least one of the elements beyond a reasonable doubt. *State v. Spaulding,* 296 N.W.2d 870, 875 (Minn.1980). Here, we conclude the trial court could have reasonably found that the state disproved at least two of the elements beyond a reasonable doubt.

First, appellant must have reasonably believed he was in imminent danger of death or great bodily harm. While it is undisputed that appellant was chased by Binkley and Rolloff, there is no evidence that either man ever verbally threatened appellant with great bodily harm or death or said anything beyond "stop" and "come here." Appellant testified that he did not know if Binkley and Rolloff had weapons and that he eventually gave up when he realized that they did not. Appellant was the one with a weapon and he attempted to use it to evade being caught. The trial court found that Rolloff had to forcibly take the knife from appellant.

In addition, the evidence supports the conclusion that appellant did not exhaust his opportunities to retreat. Rather than remaining by the vehicle when Binkley first yelled at him, appellant took off running. Rather than stopping in response to Binkley and Rolloff's instructions, appellant turned around and waved a hunting knife at Rolloff three or four times. There is no evidence that either Binkley or Rolloff touched appellant other than to forcibly take the knife away and to restrain him until the police arrived.

We conclude that the evidence is sufficient to establish that the state disproved at least two elements of appellant's self-defense claim. The adjudication of second-degree assault is affirmed.

### 3. Does appellant's adjudication of delinquency for disorderly conduct violate the First Amendment?

The trial court found appellant delinquent of disorderly conduct under Minn. Stat. § 609.72, subd. 1(3) (2000), because he

did engage in offensive, obscene, abusive language, as well as offensive, obscene, abusive, boisterous, and noisy conduct which did arouse alarm, anger, and resentment in others.

Appellant contends the statute must be read to prohibit only "fighting words" and that the court's failure to make findings in this regard renders his adjudication unconstitutional. The state agrees.

■ When reviewing a claim that an adjudication of disorderly conduct violates the First Amendment, we view the evidence in the light most favorable to the state, but independently determine whether the conduct falls outside constitutional protection. *In re the Welfare of M.A.H.,* 572 N.W.2d 752, 757 (Minn.App.1997).

■ In upholding the constitutionality of Minn.Stat. § 609.72, subd. 1(3), the Minnesota Supreme Court held that the statute must be construed narrowly so that it only applies to "fighting words." *In re the Welfare of S.L.J.,* 263 N.W.2d 412, 419 (1978). "Fighting words" are defined as

those personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent reaction or (words) which by their very utterance inflict injury or tend to incite an immediate breach of the peace.

*Id.* at 418 (quotations omitted). Thus, it is not enough if words are so "offensive, obscene or abusive" that they arouse resentment in others if they do not also tend to immediately incite a breach of the peace or provoke retaliatory action by those to whom they are spoken. *Id.* at 418–20; *see* M.A.H., 572 N.W.2d at 758.

■ Here, the evidence supports the trial court's finding that appellant used "offensive, obscene, abusive language," but the trial court did not reach, nor does the record support, a conclusion that the speech amounted to "fighting words." There is no evidence that appellant's speech tended to immediately incite a breach of the peace or provoke retaliatory action by those to whom the words were spoken. As a result, appellant's adjudication of disorderly conduct must be reversed.

### DECISION

Because the evidence is sufficient to prove appellant's adjudication for second-degree assault, that count is affirmed. But appellant's conduct in looking inside a vehicle with a flashlight and pulling on the car door handle does not constitute "tampering with a vehicle" under Minn.Stat. § 609.546(2) (2000) because he neither changed or altered the vehicle nor sub-

stantially interfered with it. Appellant's adjudication of disorderly conduct is unconstitutional because his conduct did not rise to the level of "fighting words." As a result, the adjudications of delinquency for tampering with a motor vehicle and disorderly conduct are reversed. We remand to the trial court for determination of the impact of this decision on the disposition of appellant's case.

**Affirmed in part, reversed in part, and remanded.**