

# Missouri Court of Appeals

## Southern District

### Division One

STATE OF MISSOURI,                )
                                  )
                    Respondent,   )
                                  )
        vs.                       )        No. SD32730
                                  )        Filed:  October 21, 2014
RICHARD A. MILLER,                )
                                  )
                    Appellant.    )

APPEAL FROM THE CIRCUIT COURT OF PULASKI COUNTY

Honorable Tracy L. Storie, Circuit Judge

## AFFIRMED

Richard A. Miller ("Miller") appeals from the trial court's judgment challenging the sufficiency of the evidence to support his original conviction of two counts of first-degree involuntary manslaughter, in violation of section 565.024.[1]  Finding no merit to Miller's claims, we affirm the judgment and sentence of the trial court.

---

[1] All references to statutes are to RSMo Cum.Supp. (2006), unless otherwise indicated.

## Facts and Procedural History

Following a jury trial, Miller was convicted of two counts of first-degree involuntary manslaughter. The trial court suspended imposition of sentence and Miller was placed on probation for a term of five years. After subsequent convictions for driving with a revoked license, domestic assault, and drug possession, the State filed a "Motion to Revoke Probation" on August 9, 2012. At a probation violation hearing on December 5, 2012, the parties stipulated that the State had filed a timely motion to revoke probation, and there was a clear manifestation by the State of intent to revoke Miller's probation. At that hearing, Miller admitted the violations of his probation. The trial court then ordered a sentencing assessment report be completed.

On February 6, 2013, the trial court imposed sentences of five years on each count of involuntary manslaughter with the sentences to run consecutively. On June 10, 2013, Miller was granted leave by this Court to file a late notice of appeal and granted permission to proceed *in forma pauperis*.

Miller appeals from the judgment challenging the sufficiency of the evidence to support his original conviction of two counts of first-degree involuntary manslaughter.

We review the facts in the light most favorable to the verdict. *State v. Belton*, 153 S.W.3d 307, 309 (Mo. banc 2005). On December 25, 2004, at approximately 1:15 p.m., Miller was driving a black pickup truck southbound on a two-lane stretch of Highway 63 outside of Rolla. Miller was familiar with the area and had previously driven on this stretch of Highway 63. Miller did not particularly like driving on Highway 63 because it was so narrow and made him nervous. In the past, Miller had been forced to pull over onto the shoulder when he

2

encountered cars passing in the lane for the opposite direction of traffic that had not completed the pass. Miller's wife was a passenger in the pickup truck.

As Miller neared the Beaver Creek Bridge, he approached a maroon car (the "Gresham car") that was traveling the speed limit in the southbound lane. Miller pulled into the northbound lane and advanced past the Gresham car. However, Miller continued to travel south in the northbound lane, even as he entered a no-passing zone, a blind-curve in front of the Beaver Creek Bridge, and as he continued onto the Beaver Creek Bridge itself.

Continuing to drive south in the northbound lane on the Beaver Creek Bridge, Miller struck a vehicle head-on that was traveling north in the northbound lane, killing the young couple (the "Rowdens") inside. At the time of the accident, Miller had been driving south in the northbound lane for approximately one to two minutes. Neither Miller, nor his wife, had any recollection of how the accident occurred.

Neil Poynter ("Poynter") an accident reconstructionist with the Missouri State Highway Patrol, investigated and reconstructed the accident. At trial, he testified Miller's speed at the time of impact could not be determined due to the collision occurring on the bridge and the fact that neither vehicle left any skid marks. Poynter prepared a diagram that illustrated how Miller, having passed the Gresham car, remained in the northbound lane as he approached the bridge. The point of impact occurred on the north end of the bridge when Miller's vehicle, having just gotten onto the bridge, impacted the front of the Rowden vehicle. The diagram also illustrated how Miller's vehicle after impact rotated over and hit the bridge wall in the southbound lane, then rotated once more clockwise, before coming to rest. The Rowden vehicle came to rest against the bridge wall, in the northbound lane, at the structure's midpoint. The diagram depicted a centerline that was solid on the right and broken on the left, meaning passing was

permitted for northbound vehicles only, for the entire length of the bridge. Miller's "sight distance" approaching the bridge was three-tenths of a mile. The Rowdens' sight distance approaching the bridge was one-tenth of a mile. Poynter noted that the bridge was on what is commonly referred to as a "blind turn."

On appeal, Miller argues there was no substantial evidence that he was reckless in causing the Rowdens' deaths. The issue for our determination is whether the evidence was sufficient for the jury to find beyond a reasonable doubt that Miller was reckless, in violation of section 565.024.1(1).

## Standard of Review

In reviewing a challenge to the sufficiency of the evidence, this Court must determine whether sufficient evidence permits a reasonable juror to find guilt beyond a reasonable doubt. *Belton*, 153 S.W.3d at 309.

> 'This inquiry does not require a court to ask itself whether it believes that the evidence at trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'

*State v. Bateman*, 318 S.W.3d 681, 687 (Mo. banc 2010) (quoting *State v. Chaney*, 967 S.W.2d 47, 52 (Mo. banc 1998)).

We view the evidence and all reasonable inferences therefrom in the light most favorable to the verdict, disregarding any evidence and inferences contrary to the jury's verdict. *Id.* This Court "does not act as a 'super juror' with veto powers, but gives great deference to the trier of fact." *Chaney*, 967 S.W.2d at 52 (internal quotation and citation omitted). "Even if the evidence would support two equally valid inferences, only the inference that supports the finding of guilt can be considered." *State v. Breedlove*, 348 S.W.3d 810, 814 (Mo.App. S.D. 2011) (internal

4

quotation and citation omitted). "'The trier of fact determines the credibility of the witnesses, and may believe all, some or none of the testimony of a witness.'" *State v. Edwards*, 280 S.W.3d 184, 189 (Mo.App. E.D. 2009) (quoting *State v. Burse*, 231 S.W.3d 247, 251 (Mo.App. E.D. 2007)). "The credibility and the effects of conflicts or inconsistencies in testimony are questions for the jury, and the appellate court will not interfere with the jury's role of weighing the credibility of witnesses." *State v. Coleman*, 263 S.W.3d 680, 683 (Mo.App. S.D. 2008). "'The function of the reviewing court is not to reweigh the evidence, but only to determine if the [verdict] is supported by sufficient evidence.'" *Edwards*, 280 S.W.3d at 189 (quoting *Burse*, 231 S.W.3d at 251).

**Analysis**

Miller argues that there was no substantial evidence to show recklessness to support his convictions for involuntary manslaughter.

Under section 565.024.1(1), "[a] person commits the crime of involuntary manslaughter in the first degree if he or she . . . [r]ecklessly causes the death of another person[.]" A person "'acts recklessly' or is reckless when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." § 562.016.4, RSMo 2000.

The question before us is whether, viewing the evidence in the light most favorable to the judgment below, a rational finder of fact could have found beyond a reasonable doubt that Miller "consciously disregarded a substantial and unjustifiable risk" of death of which he knew or should have known." § 562.016.4, RSMo 2000. "[S]peed combined with other circumstances

can satisfy this element of [the] offense." ***State v. Morrison***, 174 S.W.3d 646, 649 (Mo.App. W.D. 2005).

Here, the State produced substantial evidence of speed and other circumstances that satisfied the recklessness element of the offense of involuntary manslaughter. "Direct proof of a required mental state is seldom available, and the mental state may be proved by indirect evidence and inferences reasonably drawn from the circumstances[.]" ***State v. Johns***, 34 S.W.3d 93 (Mo. banc 2000).

Miller's own testimony provides evidence of his consciousness of a substantial and unjustifiable risk of death. He testified to having familiarity with Highway 63 around the crash site, that he knew the road was narrow, and had personally been forced to pull over onto the shoulder of the road when encountering cars passing in the opposite lane of traffic.

There was also substantial evidence that Miller consciously disregarded this risk. Miller, driving in excess of the speed limit, pulled into the northbound lane of Highway 63 (traveling southbound) in order to pass another vehicle. Rather than returning to the southbound lane after completing the pass, Miller continued to drive south in the northbound lane for between one and two minutes, even as he approached a blind curve and proceeded onto the Beaver Creek Bridge, striking a northbound vehicle in the northbound lane head-on and killing its occupants.

Miller's reliance on ***State v. Bradley***, 670 S.W.2d 123 (Mo.App. E.D. 1984), is misplaced. The court in ***Bradley*** did hold that defendant's conduct, standing alone, in driving on the wrong side of a two-lane, limited access highway did not by itself rise to "culpable negligence." However, the court premised that holding on two factors not presented here: (1) the accident occurred at night when visibility was limited, and (2) "defendant's actions in steadfastly maintaining his course in the passing lane could be viewed as consistent with one

6

operating under the mistaken notion that he was driving on the right hand side of a two lane highway." *Id.* at 126. Here, the accident occurred during the day and there was no evidence that visibility was limited by light or weather. Further, Miller testified to being familiar with the road and the general area of the accident, and the jury could reasonably believe that he was not under the mistaken notion that he was driving on the correct side of the road.

There was evidence from which a rational trier of fact could have found that Miller consciously disregarded a substantial and unjustifiable risk of death of which he knew or should have known. *Morrison*, 174 S.W.3d at 649. Point denied. Miller's conviction is affirmed.

WILLIAM W. FRANCIS, JR., C.J./P.J. - OPINION AUTHOR

JEFFREY W. BATES, J. - Concurs

DANIEL E. SCOTT, J. - Concurs in Separate Opinion

7



# Missouri Court of Appeals

## Southern District

### Division One

STATE OF MISSOURI,                    )
                                       )
               Respondent,          )
                                       )
    vs.                              )      No. SD32730
                                       )      Filed:  October 21, 2014
RICHARD A. MILLER,                     )
                                       )
              Appellant.           )

### CONCURRING OPINION

I concur.  The record includes evidence from which jurors could find that Miller, while driving in daylight on a road he knew, exceeded the speed limit and persisted in driving on the wrong side of the road, even into a blind curve, and thus "recklessly" killed the Rowdens.

I write only to take issue with dicta in two cases cited by Miller to the effect that driving on the wrong side of the road cannot alone support a vehicular homicide conviction.  *See* **State v. Harris**, 743 S.W.2d 484, 486 (Mo.App. 1987); **State v. Bradley**, 670 S.W.2d 123, 126 (Mo.App. 1984).

There was testimony which, if believed, indicated that Miller kept driving on the wrong side of the road for a minute or more at highway speed. I think a jury might fairly conclude that a driver who stays on the wrong side of a highway *at some point* "consciously disregards a substantial and unjustifiable risk" of accident, grossly deviates from his obligation to drive with the highest degree of care, and thus drives "recklessly." *See* § 562.016.4, RSMo 2000.

DANIEL E. SCOTT, J. – CONCURRING OPINION AUTHOR