STATE of Missouri, Respondent,

v.

Andrew William GOEKE, Appellant.

No. WD 39962.

Missouri Court of Appeals,
Western District.

July 12, 1988.

D. James Mariea, Whitlow, Riley, Mariea & Dunlap, Kansas City, for appellant.

William L. Webster, Atty. Gen., and William J. Swift, Asst. Atty. Gen., Kansas City, for respondent.

Before MANFORD, P.J., and TURNAGE and COVINGTON, JJ.

TURNAGE, Judge.

Andrew Goeke was found guilty of possession of cocaine, speeding, possession of marijuana, and possession of drug paraphernalia. The court, after a bench trial, fixed punishment at five years' imprisonment on the cocaine count, $50 fine for speeding, ten days' imprisonment for possession of marijuana and ten days' imprisonment for the possession of drug paraphernalia. The imprisonment sentences were ordered to run concurrently. Execution of sentence on the five year term was suspended, and Goeke was placed on probation for five years.

On appeal, Goeke claims he was interrogated without being given the *Miranda* warnings and that evidence of the drug violations was obtained by an illegal search and seizure. Affirmed.

Evidence was heard first on a motion to suppress evidence seized from Goeke. Trooper King of the Highway Patrol stated that he stopped Goeke on I–70 in Callaway County on September 1, 1986, after clocking the speed of Goeke's vehicle at 85 miles per hour by radar. Trooper King had Goeke walk back to the rear of Goeke's vehicle, where the Trooper checked Goeke's driver's license. The Trooper testified that he went to the front of the Goeke vehicle to check the inspection sticker and later walked along the passenger side to see what was inside the car. He stated that Goeke was alone. The Trooper saw a black shaving kit type container on the floor on the front passenger side. The Trooper inquired of Goeke as to what was in the bag. Goeke replied, "Oh, just stuff." The Trooper testified that he asked Goeke if he

could see in the bag, and Goeke replied, "Yes."

Thereafter, Goeke opened the front passenger door and got the bag. The Trooper was uncertain whether he requested Goeke to unzip it or whether Goeke unzipped it without being requested. In any event, the Trooper stated that Goeke was holding the bag at chest level and opened the bag on the top. The Trooper looked in and saw the corner of a small vinyl black bag and asked Goeke what was in that small black bag, and Goeke replied, "Just money and stuff." Goeke removed the small black bag and set the larger bag on top of the car. He unzipped the small bag and the Trooper could see some one-hundred dollar bills. The Trooper inquired as to what else was in the bag, and Goeke opened the bag to its full extent. The Trooper then saw several pieces of white paper folded into packets. The packet on top was marked with a "1" and a "g". When the Trooper observed this he placed Goeke under arrest because in his training he had learned that the packet probably contained one gram of cocaine. After the Trooper placed Goeke under arrest he searched the larger bag and found paper packets containing marijuana. A pipe with burned marijuana residue was taken from Goeke's pants pocket after Goeke had been taken to the Fulton Police Station.

The motion to suppress alleged that the cocaine, marijuana, and pipe were all taken as a result of an illegal search and seizure and further alleged that Goeke had been interrogated without being given his *Miranda* warnings. Goeke testified on the motion to suppress that the Trooper had not requested to look into the shaving kit and the small bag but had ordered Goeke to allow him to look into it.

The court found that Goeke had consented to the search of the small bag and that thereafter the further search of the large bag and of his person were incidents of a lawful arrest made after discovery of the paper packets. The parties agreed that the court would try the case without a jury based upon the evidence heard on the motion to suppress and some additional evidence not pertinent to this appeal.

■ Goeke first contends that Trooper King interrogated Goeke about the contents of the two bags while Goeke was in custody and without giving him the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In *Miranda*, the Court stated:

[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.

384 U.S. at 444, 86 S.Ct. at 1612.

Goeke does not point to any inculpatory or exculpatory statements that he made but simply contends that the interrogation was undertaken without giving the warnings that *Miranda* requires. Even assuming, without deciding, that Goeke was in custody at the time the Trooper inquired as to the contents of the two bags, there was no evidence that Goeke made any incriminating statements. The only responses to which the Trooper testified were "oh, just stuff" when the first question concerning the large bag was asked and "just money and stuff" when the second question was asked concerning the smaller bag. These statements certainly did not incriminate Goeke on the charge of possession of cocaine, marijuana, and drug paraphernalia. The interrogation, even if it violated *Miranda*, did not produce any incriminating evidence that the State used. For that reason, it is immaterial whether or not *Miranda* warnings were given prior to the questions being asked.[1]

■ Goeke next contends that the search was not consensual and was therefore a

---

1. Although Goeke alleged the failure to give him the *Miranda* warnings as a ground on which to find an illegal search, the connection is not clearly spelled out. The argument seems to be that somehow the questions concerning the shaving kit led to the discovery of the drugs. However, the kit was in plain view so that the Trooper saw it as he passed the front seat. The interrogation did not lead to the discovery of the kit or the drugs within it.

prohibited search and seizure. He argues that the presence of the officer in uniform and wearing a handgun was so coercive that the search could not be held to be consensual. Goeke contends that the officer under these circumstances represented such an authority figure that a college student was bound to feel coerced into opening the bags. In *State v. Johns*, 679 S.W.2d 253, 261[12, 13] (Mo. banc 1984), the court held that the fourth amendment "permits consensual searches conducted without a warrant so long as the consent to the search was voluntary and not the product of duress, coercion or fraud." The court held that whether or not the consent was voluntary is to be determined by the totality of the circumstances and the State must prove by a preponderance of the evidence that the consent was voluntary. The court further observed that an appellate court gives due regard to the trial court's assessment of the credibility of witnesses. *Id.* at 261[9, 10]. In *State v. Clark*, 671 S.W.2d 1, 4[11] (Mo.App.1983), the court quoted from *State v. Reese*, 625 S.W.2d 130, 132 (Mo.1981), as follows:

In determining whether the consent to search was voluntarily given, the court may consider such factors as: "[T]he number of officers present, the degree to which they emphasized their authority, whether weapons were displayed, whether the person was already in police custody, whether there was any fraud on the part of the officers, the acts and statements of the consenter, and other matters comprising the totality of the circumstances."

Goeke does not point to any actual coercion asserted by the Trooper and certainly does not contend that Trooper King committed any fraud to obtain his consent. Goeke relies instead on the fact that the Trooper was in uniform and armed, while he was a mere college student.

The court was justified in finding from the evidence that the Trooper inquired if he could look into the two bags and that Goeke consented and voluntarily opened the bags for the Trooper to observe their contents. There is no coercion shown in the evidence. The fact that the Trooper was in uniform is not coercion in and of itself because troopers generally wear uniforms when on patrol duty and people are accustomed to seeing highway troopers in uniform. The fact that Goeke was a college student does not demonstrate coercion, but would rather indicate that Goeke would be familiar with highway patrol troopers. There was only one Trooper present, and the entire incident occurred on the shoulder of a heavily traveled highway. There was no evidence of threats or other action on the part of the Trooper that could be described as coercive. In short, there was nothing shown by the evidence beyond a routine traffic stop and the voluntary opening of a black bag. There is no evidence that Trooper King exerted coercion, actual or implied, to obtain Goeke's consent to the search.[2] Finding that the search was consensual, the court was correct in overruling the motion to suppress.

The judgment is affirmed.

2. This argument is a variation on the defense asserted at trial. Goeke testified that the Trooper did not ask if he could see in the two bags but ordered Goeke to open them. Acknowledging that the trial court passes on the credibility of witnesses and could have believed the Trooper's testimony that he only requested permission to look into the bag, Goeke now argues implied coercion.