**STATE of Missouri, Respondent,**

v.

**Carlos Khalil SANAD, Appellant.**

**No. WD 40676.**

Missouri Court of Appeals,
Western District.

Jan. 10, 1989.

Gary L. Stamper, Columbia, for appellant.

William L. Webster, Atty. Gen., Elizabeth L. Ziegler, Asst. Atty. Gen., Jefferson City, for respondent.

Before FENNER, P.J., and
MANFORD and GAITAN, JJ.

GAITAN, Judge.

Carlos Khalil Sanad, defendant-appellant, was tried before a jury and found guilty of possession of cocaine in violation of §§ 195.020 and 195.200.1(1), RSMo 1986 and was sentenced to a maximum term of 20 years imprisonment. He appeals the trial court's decision alleging it erred in the following respects: (1) by failing to suppress evidence seized from the trunk of his car; (2) by failing to suppress an inculpatory statement of appellant which was made without being given a *Miranda* warning; and (3) by not suppressing Exhibit 9, a photograph of a magazine captioned "Cocaine Billionaires". We affirm the judgment of the trial court.

On September 6, 1987, two highway patrol officers, Trooper James E. Lane and Sergeant Vincent J. Ellis, were patrolling on opposite sides of Interstate 70. Trooper Lane who was traveling eastbound, detected a tan Fleetwood Cadillac traveling westbound at an approximate speed of 81 m.p.h. Trooper Lane radioed Sergeant Ellis who was traveling westbound to pursue the car while Trooper Lane crossed the median to join him. Trooper Lane signaled the tan car, with flashing red lights, to pull over to the side of the road at which point he pulled in behind the tan car.

Trooper Lane then approached the car at which time, defendant, a twenty year-old resident alien from Panama, voluntarily got out of the car with a map in his hand and started asking Trooper Lane directions to Minneapolis, Minnesota. Defendant told Trooper Lane that he was moving to Minneapolis and needed directions. Trooper Lane then advised defendant that he had been stopped for speeding and asked for his driver's license, and defendant produced a Florida driver's license. At this point, Trooper Lane told defendant that he would have to issue him a traffic ticket and to come to the patrol car while the ticket was being completed. As they neared the rear of the defendant's car, Sergeant Ellis, who had overheard the previous discussion, had observed that the car license plates were New York and that no luggage was visible. Consequently, Sergeant Ellis asked defendant "Do you mind if we look through your vehicle?". Defendant responded "Sure. Go right ahead." Defendant then opened the vehicle's trunk and got out a briefcase which he opened and showed the contents to Sergeant Ellis. Sergeant Ellis then suggested to speed up the process, that he continue the search while defendant was completing the ticket with Trooper Lane in the patrol car. Defendant then went with Trooper Lane to his car, which was parked directly behind defendant's car, and completed the ticket. Defendant sat in the front seat and was able to observe Sergeant Ellis as he conducted the search.

Sergeant Ellis continued his search of the trunk, finding articles of clothing, produce, and a white bag with clothing inside and a child's yellow lunchbox. He opened the lunchbox and found a block wrapped in black and tan plastic tape. Sergeant Ellis took the package to the patrol car and asked the defendant, "What is this?". Defendant replied, "Cocaine." Sergeant Ellis returned to continue the search and defendant stated to Trooper Lane without any further questions that he had never done this before, that the package did not belong to him and that he was taking the package to a friend in Minneapolis. Trooper Lane then placed defendant under arrest, read him his *Miranda* rights and transported defendant to the Columbia Police Department. Upon arrival at the police department, defendant was once again read his *Miranda* rights, he signed a waiver of his rights form, and a form consenting to the search.

Defendant filed a motion to suppress evidence which was denied at a hearing held on the motion. At trial, defendant objected to the admission of the package and filed a new motion to suppress defendant's statements acknowledging the contents of the package given at the scene of the arrest. This motion was also denied.

Defendant's defense at trial was that he had no knowledge that the package was in his car and therefore, was not guilty.

I.

Defendant contends in his first point that the trial court abused its discretion in denying his motion to suppress the seized package of cocaine because defendant did not voluntarily consent to the search of his automobile. He premises this argument upon the fact that at the time the consent to search was made he was in custody and was unaware of the fact that he could deny the request to search.

A search or seizure is valid if it is made with proper voluntary consent. *State v. Lingar*, 726 S.W.2d 728, 736 (Mo. banc 1987). "Whether there was a voluntary consent is to be determined by the totality of the circumstances." *State v. Johns*, 679 S.W.2d 253, 261 (Mo. banc 1984) (quoting *State v. Blair*, 638 S.W.2d 739, 750 (Mo. banc 1982)).

It is well established that the determination of whether consent was voluntary depends upon many factors including but not limited to "the number of officers present, the degree to which they emphasized their authority, whether weapons were displayed, whether the person was already in police custody, whether there was any fraud or misleading on the part of the officers, and the evidence as to what was said and done by the person consenting." *State v. Rush*, 497 S.W.2d [213] at 215 [Mo.App.1973]. Although

knowledge of the right to refuse consent is relevant, it is not essential in showing consent.

*State v. DuBose*, 617 S.W.2d 509, 514 (Mo. App.1981).

We believe defendant's consent was voluntary for the following reasons. First, there were only two patrol officers present, only one of which approached defendant's door while the other remained at the rear of the car. Second, Trooper Lane immediately informed defendant that he had been stopped for exceeding the speed limit and that he would have to issue defendant a traffic ticket. Third, neither officer drew his weapon or physically restrained defendant. Fourth, defendant was asked by Sergeant Ellis, "Do you mind if I look through your vehicle?" to which defendant willingly consented, "Sure. Go right ahead." Finally, defendant opened the trunk himself without being asked and even opened the briefcase inside the trunk. Defendant then sat in the front seat of the patrol car directly behind his own vehicle and watched the entire search while completing the traffic ticket, and at no time requested the search to cease. Additionally, both officers testified that they would not have proceeded with the search without consent, or without probable cause. They testified at the hearing that the defendant was very cooperative and that they had conversed fluently with him. We believe that under the totality of the circumstances test, defendant's consent was voluntarily given. Therefore, defendant loses on this point.

## II.

Next, defendant contends that the trial court abused its discretion in admitting into evidence an inculpatory statement acknowledging the nature and character of seized contraband because defendant's detention for a traffic violation turned into custody and therefore, he was entitled to a *Miranda* warning. Defendant's entitlement to a *Miranda* warning is conditional upon the existence of both custody and interrogation. *State v. Mouser*, 714 S.W. 2d 851, 855 (Mo.App.1986). Defendant alleges that his detention turned into custody when Sergeant Ellis suggested that he sit with Lane and complete the traffic ticket while Ellis completed the search. Defendant relies upon the three prong test in *State v. Bradley*, 670 S.W.2d 123 (Mo.App. 1984), for determining when an interrogation becomes custodial. The test is: (1) whether there was probable cause to arrest; (2) whether the investigation at the time of the interrogation had focused on the accused; and (3) the subjective intent of the police officer. A person is not in custody when he is only being asked investigatory questions by the police. *Mouser*, 714 S.W.2d at 855. Even when a person is a suspect, if he is not under arrest or otherwise restrained, custodial interrogation does not exist. *Id.* at 855 (citing *Oregon v. Mathiason*, 429 U.S. 492, 493–496, 97 S.Ct. 711, 713–714, 50 L.Ed.2d 714 (1977)). Defendant was stopped initially for exceeding the speed limit. Having observed a traffic violation, Trooper Lane possessed the authority to stop defendant's vehicle for the purpose of issuing a traffic summons. *See State v. Reynolds*, 753 S.W.2d 1, 2 (Mo.App.1988). The fact that Trooper Lane stopped defendant for speeding does not mean that the defendant was in police custody. Defendant has failed to show that prior to the actual arrest he was ever subject to restraints comparable to a formal arrest. *See Berkemer v. McCarty*, 468 U.S. 420, 441, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317 (1984).

The defendant has failed to demonstrate the detention at some point turned into custody. At no point did the detention turn into custody prior to defendant's formal arrest. Defendant was not requested to leave his car, but voluntarily got out and met the officers. Defendant was advised why he was stopped and was told that he would be issued a traffic ticket. He was asked to come and sit in the patrol car while the ticket was being completed. When the contraband was found and the defendant was asked what it was he voluntarily replied "cocaine." At no time was he physically restrained or orally threatened or abused. In fact, Sergeant Ellis alluded to defendant that he would soon be on his way even after he had requested to search

the car. Defendant has failed to demonstrate when the detention turned into custody.

Under the *Bradley* test adopted by this Court in *State v. Pruitt,* 714 S.W.2d 544, 548 (Mo.App.1986), defendant has failed to show that his detention was custodial in nature. Under the first prong, police did not have probable cause to arrest defendant because prior to making the inculpatory statement, the police had merely stopped defendant for speeding. After consenting to a search of the vehicle the officers had no reason to believe that the cocaine package belonged to defendant or even if he was aware of its existence. Therefore, defendant has failed the second prong because it was not until after defendant spoke that the investigation focused on him. As to the third prong, Sergeant Ellis testified he had a "hunch". However, "a mere suspicion in the officer's mind was not enough to make questioning custodial," *Bradley,* 670 S.W.2d at 127 (citing *State v. Pierce,* 556 S.W.2d 216, 217 (Mo.App.1977)). Sergeant Ellis' inquiry came in the process of his general on-the-scene investigation. Defendant has failed all three prongs of the *Bradley* test, and therefore, has failed to establish that his detention was custodial in nature.

### III.

■ Finally, defendant challenges the state's use of Exhibit 9, a photograph of defendant's open briefcase and the contents inside, and in particular, a copy of the *NEW YORK TIMES MAGAZINE* with the headline "Cocaine Billionaires." He states that the prejudicial effect of the exhibit outweighs any probative value in that it implies defendant's familiarity with the cocaine industry. However, this exhibit was relevant for the purpose of showing the location of and contents in the trunk where the contraband was found. This corroborates the police officers' testimony. Additionally, the photograph is relevant to defendant's knowledge and intent to possess illegal drugs.

The trial court has broad discretion regarding the admission of photographic evidence. As long as a photograph has potential value to assist in the jury's understanding of verbal testimony, the appellate court may not overturn the trial court's admission of it. *State v. Nash,* 648 S.W.2d 911, 913 (Mo.App.1983). A photograph must not be challenged merely on the basis that it has a prejudicial effect. *State v. Curry,* 714 S.W.2d 798, 800 (Mo.App.1986). As observed by the Missouri Supreme Court in *State v. Shaw,* 636 S.W.2d 667 (Mo. banc 1982);

> [I]t would be foreign to our concept of criminal jurisprudence to suggest that relevant evidence should be inadmissible merely because it tends to prejudice the defendant (citation omitted). Any incriminating evidence is by definition prejudicial. Relevance is the touchstone of due process, and beyond that the decision whether potentially prejudicial or inflammatory evidence should be admitted lies within the sound discretion of the trial court (citation omitted), which is in a better position to balance the probative value and danger of the evidence.

*Id.* at 672.

The state presented testimony by Sergeant Ellis, who had conducted the search of defendant's automobile. Sergeant Ellis testified as to the contents he had found in a trunk and identified the photographs as those taken of defendant's automobile. Defendant further described each photograph and identified them as depicting the scene of the arrest. The photographs were relevant to corroborate Sergeant Ellis' testimony. The photographs had probative value and could aid the jury in its understanding of the condition, appearance and location of the contraband. *See State v. Zeitvogel,* 655 S.W.2d 678, 684–85 (Mo.App. 1983).

It is the burden of the prosecution to prove to the satisfaction of the jury every element of the crime beyond a reasonable doubt, and the state "should not be unduly limited as to the manner of satisfying this quantum of proof." *State v. Clemons,* 643 S.W.2d 803, 805 (Mo. banc 1983). Knowledge of possession is an element of the crime of possession of a controlled sub-

stance which is one element the state had the burden of proving. *See* § 195.020, RSMo 1986. A part of the state's proof of this case was defendant's statement following his acknowledgement that the package contained cocaine, that this was the first time he [defendant] had done anything like this and that the package was not even his, and he was taking this to Minneapolis for a friend. Defendant's knowledge and attempt to possess cocaine can reasonably be inferred from the defendant's possession of a magazine with the headline "Cocaine Billionaires" contained in defendant's briefcase. The photograph, Exhibit 9, assisted the jury in this inference.

The judgment of the trial court is affirmed.

All concur.