UNITED STATES of America, Appellee,

v.

Gerald Victor BOUCHER, Appellant.

No. 89–2203.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 15, 1990.

Decided July 27, 1990.

Stanton Bloom, Tucson, Ariz., for appellant.

Gregory K. Johnson, Springfield, Mo., for appellee.

Before McMILLIAN and FAGG, Circuit Judges, and STROM,* District Judge.

McMILLIAN, Circuit Judge.

Gerald Victor Boucher appeals from a final judgment entered in the District Court[1] for the Western District of Missouri. Boucher pled guilty to one count of possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and one count of use of a firearm "during and in relation to" the drug offense, in violation of 18 U.S.C. § 924(c). Boucher reserved the right to appeal the denial of his pretrial motions to suppress. The district court sentenced Boucher to imprisonment for 21 months on the drug charge and 5 years on the firearms charge, to be served consecutively, 5 years supervised release, and a $100 special assessment. For reversal, Boucher argues that the dis-

---

\* The Honorable Lyle E. Strom, Chief Judge, United States District Court for the District of Nebraska, sitting by designation.

1. The Honorable William R. Collinson, Senior United States District Judge for the Western District of Missouri.

trict court erred in denying his motion to suppress evidence seized as a result of his arrest following a routine traffic stop. Boucher asserts that: (1) the traffic stop for speeding was a pretext to stop and search his vehicle, (2) the presence of a gun in plain view did not give the officer probable cause for the search, (3) the district court erred in allowing the admission of pre-*Miranda* statements to justify the search, (4) the scope of the search exceeded the scope of Boucher's consent, (5) neither the inventory search rule nor the principle of inevitable discovery apply, and (6) there was no factual basis for Boucher's guilty plea to the weapons charge. For the reasons discussed below, we affirm the judgment of the district court.

## I. Facts

On November 14, 1988, Trooper Michael A. Cooper of the Missouri State Highway Patrol was on routine traffic patrol heading west on Interstate Highway 44 in Laclede County, Missouri. Boucher was traveling east in a pickup truck with a camper shell. Cooper testified that from his experience, Boucher appeared to be exceeding the state speed limit of 65 miles per hour. Cooper activated his radar unit in his patrol car, directed it toward Boucher's pickup, and obtained a reading of 72 miles per hour, which was in excess of the speed limit. Cooper was unable to obtain a "lock" on his radar reading due to interference from a nearby overpass, but he activated his red lights and effected a stop for speeding without the "lock."

Boucher was alone in his pickup. Cooper approached the pickup and requested Boucher to produce his driver's license and registration for the pickup. Cooper observed that Boucher had an Arizona driver's license which spelled his name B–O–C–H–E–R, but his license plates and registration were from Nevada and his registration spelled his name B–O–U–C–H–E–R. At that point Cooper asked Boucher to step out of the pickup. Through the window of the truck, Cooper observed the butt end of a revolver sticking out between the seat and the seat-back. The revolver had been concealed by Boucher's body when he was seated in the pickup. Cooper did not acknowledge the gun's presence, but conducted a pat down search of Boucher and, finding no weapons on him, asked Boucher to sit in the patrol car. In the patrol car, Cooper proceeded to issue Boucher a traffic ticket for speeding. While writing the ticket, Cooper asked Boucher whether he had any weapons, drugs, or large quantities of cash in the pickup. Boucher was unaware that Cooper had seen the handgun in the front seat of the pickup and denied the presence of those items in the vehicle. Cooper then asked Boucher if he could have a look in the pickup and Boucher consented.

Upon exiting the patrol car, Cooper performed a more thorough pat down search of Boucher and advised him of his *Miranda* rights. Cooper proceeded to search the cab of the pickup and located the revolver he had observed earlier. The revolver was loaded with hollowpoint bullets. At that point Boucher stated that he was a private investigator and he carried the revolver for personal protection. Cooper then opened an unlocked briefcase in which he found a second revolver, also loaded with hollowpoint ammunition. The revolver was cocked and ready to fire. Boucher stated that the second revolver was also his. Cooper also discovered records which he believed evidenced drug transactions, as well as substantial currency in the briefcase.

Having discovered these items in the cab of the pickup, Cooper went to the rear of the truck and opened the door and tailgate of the camper shell. Inside the shell, Cooper observed coffee grounds scattered on the bed of the truck, an aerosol can of air freshener, and a bottle of ammonia. From Cooper's training and experience, he knew these items are commonly used to disguise the odor of narcotics from humans and dogs. The bed of the pickup was covered by a rubber bedliner which Cooper observed was raised approximately 18 inches at the cab end of the truck bed. Boucher stated that the raised portion of the bedliner served as a "bunk." Cooper noted that Boucher was taller than the width of the

truck bed and the "bunk" and proceeded to lift the bedliner at the place where it was raised. Cooper discovered four bales (77 pounds) of compressed marijuana buds under the bedliner.

In the district court, Boucher filed motions to suppress concerning the arrest and seizures involved in the case. After a hearing and a supplemental hearing on the suppression issues, the district court held that Boucher's statements made before he was advised of his *Miranda* rights were answers to questions incident to a routine traffic stop and were admissible. The district court also found that discovery of the revolver and the drug notes authorized the complete search of Boucher's vehicle and all items found pursuant to that search were admissible. We agree.

## II. Traffic Stop and Search

██ This court has held that a "clearly erroneous" standard of review is to be applied when assessing a district court's decision to deny a motion to suppress. *United States v. Eisenberg*, 807 F.2d 1446, 1499 (8th Cir.1986) (citing *United States v. Lewis*, 738 F.2d 916, 920 (8th Cir.1984), *cert. denied*, 470 U.S. 1006, 105 S.Ct. 1362, 84 L.Ed.2d 383 (1985)). We will affirm a district court's order denying a motion to suppress unless we find that the decision is unsupported by the evidence, based on an erroneous interpretation of the law, or we are left with a firm conviction that a mistake has been made. *United States v. Pantazis*, 816 F.2d 361, 363 (8th Cir.1987) (citing *United States v. Lewis*, 738 F.2d at 920). Boucher argues that the initial traffic stop for speeding was unlawful and was simply a pretext for an investigatory stop. Boucher asserts that the record supports his claim because the government presented no evidence that Boucher was speeding other than Cooper's opinion as a police officer. We disagree. Cooper testified that he was absolutely certain that the vehicle was speeding and confirmed his observation by radar, although he did not get a "lock" on his reading. Based upon Cooper's testimony, the district court found that Boucher was speeding. Nothing in the record suggests that the finding was erroneous, or that Cooper stopped Boucher for any other reason, i.e., a hunch or suspicion that Boucher was committing some other offense.

██ Boucher next argues that even if he were speeding, Cooper's observation of the gun in the front seat during the traffic stop did not constitute probable cause for an arrest and subsequent search of the pickup. We disagree. Cooper first approached the pickup and asked Boucher for identification and registration. Because Cooper noted several inconsistencies in these documents, he asked Boucher to exit the pickup and sit in the patrol car for questioning. It is constitutionally permissible for a police officer to make such requests of a traffic violator. *Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98 S.Ct. 330, 333, 54 L.Ed.2d 331 (1977).

██ The significant event in this case was Cooper's observance of the gun after Boucher exited the pickup. Cooper testified that the gun was stuck between the seat and the seat back. The gun was not in plain view prior to this time because Boucher was sitting on it and it was therefore concealed. Even if Boucher had not been sitting directly on top of the weapon, under Missouri law a weapon is concealed when it is not visible by ordinary observation even where it is visible from one particular vantage point. *State v. Crews*, 722 S.W.2d 653, 654 (Mo.Ct.App.1987). Carrying a concealed weapon is a violation of Missouri law. Mo.Rev.Stat. § 571.030(1) (1986). Therefore, Cooper had probable cause at that point to make an arrest, although he was not required to do so. An arrest for carrying a concealed weapon has been recognized as a sufficient basis for making a full custodial arrest by this court. *United States v. Jackson*, 741 F.2d 223, 224 (8th Cir.1984).

## III. Pre-*Miranda* Statements

██ Boucher next asserts that he was "in custody" long before Cooper formally arrested him, therefore his pre-arrest statements made in the patrol car regarding weapons, drugs, and cash, as well as his

consent to search the truck, were tainted. We hold that Boucher was not in custody prior to the formal arrest which took place after Cooper's routine questioning in the patrol car and prior to the search of the trunk, and thus no waiver of Boucher's fifth amendment rights was required pursuant to *Miranda* until that time. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *Miranda* warnings are not imposed because the questioning is conducted in a certain place, i.e., a patrol car, or because the person being questioned is suspected of having committed some offense. *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977). The relevant inquiry is "how a reasonable [person] in the suspect's position would have understood [the] situation." *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317 (1984). This objective standard outweighs the suspect's subjective beliefs.

█ A reasonable person in Boucher's position would not have considered Cooper's questions in the patrol car a custodial interrogation. Boucher was unaware that Cooper had seen the gun in the seat. Boucher had no reason to suspect that Cooper knew of the gun or anything else in the pickup at that point and had no reason to believe that he was suspected of anything other than speeding. The observation of the weapon by Cooper and the non-custodial questioning based on his observations were lawful as incidental to the processing of a routine traffic stop. *Texas v. Brown*, 460 U.S. 730, 739, 103 S.Ct. 1535, 1541, 75 L.Ed.2d 502 (1983). The fifth amendment protections offered by *Miranda* are designed to eliminate those situations where the person questioned could be induced to speak "where he would not otherwise do so freely." *Miranda v. Arizona*, 384 U.S. at 467, 86 S.Ct. at 1624. In a routine traffic stop, detention of an individual is usually temporary and public. The atmosphere of a traffic stop is "substantially less 'police dominated' than that surrounding the kinds of interrogation at issue in *Miranda* itself." *Berkemer v. McCarty*, 468 U.S. at 439, 104 S.Ct. at 3149. Furthermore, as noted above, Cooper was already aware of the gun in the pickup and it was reasonable for him to question Boucher about it prior to *Miranda* warnings. *United States v. Harris*, 611 F.2d 170, 173 (6th Cir.1979) (questioning of suspect in his hotel room as to whether he had a weapon did not require *Miranda* warnings); *United States v. Harris*, 528 F.2d 914, 915 (4th Cir.1975) (inquiry by federal agents as to whether suspect had a gun was not a "custodial interrogation" requiring *Miranda* warnings because agents had previously observed the gun and exercised no control over the suspect other than temporary detention and search), *cert. denied*, 423 U.S. 1075, 96 S.Ct. 860, 47 L.Ed.2d 86 (1976).

Boucher further contends that the questioning in the patrol car was a deliberate attempt by Cooper to elicit incriminating statements through a "backdoor interrogation" when Cooper could have arrested him initially upon seeing the gun and given *Miranda* warnings at that time. Boucher argues that Cooper's plan effectively placed him in custody. However, the objective test set out in *Berkemer v. McCarty* dismisses this argument because Boucher was unaware of Cooper's intentions at the time. "A police [officer's] unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time." *Berkemer v. McCarty*, 468 U.S. at 442, 104 S.Ct. at 3151. For the reasons stated above we hold that the district court did not err in admitting Boucher's pre-arrest statements concerning guns, drugs, and cash. Boucher's claim that his consent to search the pickup was the result of an illegal detention and a pretextual stop consequently fails as well.

## IV. Scope of Concensual Search

█ Alternatively, Boucher argues that his consent to "look" in his truck was not a consent to "search" and therefore the scope of the search exceeded that consent. However, when Cooper asked Boucher if he could "take a look" in his truck, Boucher responded "I'll help you get the stuff out, if you want." We agree with the district court's finding that Boucher could

only have assumed the request was for a full examination of the pickup rather than a cursory look through the windows. We note, however, that the issue of consent is irrelevant in this case. Cooper already had probable cause to search the vehicle resulting from his observation of the concealed weapon in the front seat. A warrantless search of an automobile does not violate the fourth amendment when there is probable cause to believe it contains contraband or other evidence of criminal activity. *Arkansas v. Sanders,* 442 U.S. 753, 760, 99 S.Ct. 2586, 2591, 61 L.Ed.2d 235 (1979). As noted above, Cooper observed the weapon pursuant to a routine traffic stop and probable cause was created first by the observation of a concealed weapon, a violation of Missouri law, and secondly by Boucher's denial during non-custodial questioning that there were weapons in the pickup. Additionally, Cooper was justified in searching for the weapon (which he had already observed) pursuant to the limited search doctrine in *Michigan v. Long,* 463 U.S. 1032, 1047, 103 S.Ct. 3469, 3479, 77 L.Ed.2d 1201 (1983) (a protective search of the passenger compartment of a car is reasonable under the principles articulated in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), i.e., danger may arise from the possible presence of weapons in the area surrounding a suspect). *See also United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). In light of our determination that Cooper made a lawful search of the pickup, it is unnecessary to consider whether the inevitable discovery rule applies in this case.

## V. Guilty Plea

Boucher finally asserts that the district court's acceptance of his guilty plea to the firearms count of his indictment was not supported by a sufficient factual basis on the record pursuant to Rule 11 of the Federal Rules of Criminal Procedure. After carefully reviewing the transcript of the Rule 11 proceeding, we conclude that the district court had sufficient facts upon which to accept Boucher's plea. The record clearly establishes that Boucher had one fully loaded Smith and Wesson .34-122

caliber revolver on the front seat of his pickup which was concealed by his person. Boucher also had a loaded Walther PPK .380 caliber pistol in an unlocked briefcase on the floor of the cab. In his signed plea agreement, Boucher acknowledged the firearms were available for his use. This circuit has held that a violation of 18 U.S.C. § 924(c) is supported by showing that a firearm was available for use during and in relation to a drug trafficking offense. *United States v. Patterson,* 886 F.2d 217 (8th Cir.1989); *United States v. Matra,* 841 F.2d 837 (8th Cir.1988). Thus, we reject Boucher's contention as without merit.

In summary, we hold that the district court committed no error in denying Boucher's motion to suppress and accepting the plea. Accordingly, the judgment of the district court is affirmed.