**STATE of Missouri, Respondent,**

v.

**Mark A. BROWN, Appellant.**

**No. WD 43410.**

Missouri Court of Appeals,
Western District.

July 30, 1991.

J. Gregory Mermelstein, Columbia, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before KENNEDY, P.J., and SHANGLER and ULRICH, JJ.

ULRICH, Judge.

Mark A. Brown was convicted following a bench trial of possessing more than thirty-five grams of marijuana, § 195.020, RSMo 1986, and sentenced to three years' imprisonment. On appeal, Mr. Brown claims the trial court erred in overruling his motion to suppress certain evidence acquired during a search of his motor vehicle because (1) the search was conducted without his consent, without a need to protect the highway patrolman conducting the

search, and without probable cause to search; (2) the highway patrolman's questions during a traffic stop constituted custodial interrogation in violation of his privilege against self-incrimination; and (3) a subsequent search of his vehicle's trunk was not a valid inventory search. The conviction is affirmed.

On May 30, 1989, Trooper Robert Westfall, an officer with the Missouri State Highway Patrol, was conducting radar checks for speeding motorists on U.S. Highway 36 in Caldwell County. Trooper Westfall observed a black 1989 Nissan Sentra traveling at 81 miles per hour. Trooper Westfall stopped the speeding vehicle, which bore Oklahoma license plates.

Trooper Westfall approached the vehicle and found that Mark A. Brown was the sole occupant. Trooper Westfall advised Mr. Brown that he was going to issue him a citation for speeding. At that time, Trooper Westfall asked Mr. Brown if he had "any knives, guns or drugs in the vehicle." According to Trooper Westfall's testimony, Mr. Brown responded, "Well, I do have a knife in the glove box." Trooper Westfall then requested Mr. Brown's permission to "search the vehicle." Trooper Westfall testified that Mr. Brown assented to his request by stating "Yes" and "It's okay."

Trooper Westfall asked Mr. Brown to step out of his vehicle as he commenced to search the automobile's passenger compartment. During this initial search, Trooper Westfall discovered a large knife in the vehicle's glove compartment and several partially smoked marijuana cigarettes in an ash tray. Trooper Westfall then asked Mr. Brown if there were more drugs in the vehicle. Mr. Brown replied that there was "more underneath the seat." Upon further search, Trooper Westfall discovered a plastic baggie containing marijuana underneath the seat of Mr. Brown's automobile.

At that point, Trooper Westfall placed Mr. Brown in his patrol car and advised him of his constitutional rights pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Trooper West-

fall presented Mr. Brown with a choice between having his automobile towed to the Caldwell County Sheriff's office or driving the automobile to that location. Mr. Brown chose to drive his automobile to the Sheriff's office.

Upon arriving at the Caldwell County Sheriff's office, Deputy Jerry Ritchie of the Sheriff's Department assisted Trooper Westfall in conducting an additional search of Mr. Brown's vehicle. During this search, the officers acquired the keys to the automobile's trunk from Mr. Brown. Upon opening the trunk, the officers discovered a glass water pipe and ten plastic bags containing marijuana. At trial, the State's evidence established that the combined weight of all marijuana found in Mr. Brown's vehicle amounted to 78.9 grams.

At the Sheriff's office, Mr. Brown agreed to provide the officers with a written statement. The handwritten statement completed by Mr. Brown states as follows:

I was pulled over for speeding, 81. I thought I was going around 70–75, and he asked me what the hurry was and I told him that I was going to pick up a friend, and he asked me if I had any weapons or drugs. I told him there was a knife in the glove box. He asked if he could search the car and I let him. He found a roach ... and then he asked if I had any more. I told him I had a bag under the seat. He then asked to have a seat in the car and he read me my rights. He asked me if I had any more and I told him no cause I was scared. It was my first time for anything like this to happen. When we arrived at the Sheriff's Department, they searched again and they found the rest of the dope in the trunk,

/s/Mark Brown

Mr. Brown was charged by information with possession of more than thirty-five grams of marijuana, § 195.020. Prior to trial, Mr. Brown filed a motion to suppress requesting that the trial court suppress all evidence of the partially smoked marijuana cigarettes found in the ash tray, the plastic bag containing marijuana found underneath his seat, the ten baggies of marijua-

na found in the trunk, the glass water pipe found in the trunk, the written statement provided to the officers at the Sheriff's Department and any oral statements made to Trooper Westfall. Mr. Brown waived his right to a jury trial and the trial court heard evidence on Mr. Brown's motion to suppress along with the evidence at trial.

Following the bench trial, the trial court determined that Mr. Brown's reply that more marijuana was underneath the automobile's seat should be suppressed because the defendant was, at that moment, in custody and had not received a *Miranda* warning. However, the trial court denied the remainder of Mr. Brown's motion to suppress. The trial court also determined that Mr. Brown was guilty of possession of more than 35 grams of marijuana. On appeal, Mr. Brown does not contest the sufficiency of the evidence to support the conviction. Mr. Brown only contests the trial court's denial of his motion to suppress evidence.

On review, this court must affirm a trial court's ruling on a motion to suppress if the evidence is sufficient to sustain the trial court's finding. *State v. Stolzman*, 799 S.W.2d 927, 936 (Mo.App. 1990). This court must consider all facts and reasonable inferences favorable to the challenged order and disregard contrary evidence and inferences when sufficient evidence supports the trial court's finding. *State v. Pena*, 784 S.W.2d 883, 885 (Mo. App.1990). This court must also defer to the trial court's superior opportunity to determine the credibility of the witnesses and the weight of the evidence. *Stolzman*, 799 S.W.2d at 936.

For point (1), Mr. Brown contends that the trial court erred in denying his motion to suppress evidence of any marijuana found in his vehicle and his statement given at the Sheriff's office because Trooper Westfall's initial search of his closed ash tray constituted an unreasonable search in violation of his constitutional rights. In particular, Mr. Brown contends that Trooper Westfall's initial search of his vehicle was conducted without his consent, without any need to protect Trooper Westfall's

safety and without probable cause to search. Mr. Brown claims that all subsequently seized marijuana and his statement are, therefore, "fruit of the poisonous tree."

Consensual searches conducted without a search warrant do not violate the Fourth Amendment so long as the consent to the search was voluntary and not the product of duress, coercion or fraud. *State v. Goeke*, 768 S.W.2d 84, 86 (Mo.App.1988). The State bears the burden of proving by a preponderance of the evidence that the consent was voluntary. *Id.* "Whether a consent to search was voluntary or was the product of duress or coercion, express or implied, is to be determined from the totality of all the surrounding circumstances." *Stolzman*, 799 S.W.2d at 936; *see also*, *State v. Sanad*, 769 S.W.2d 436, 438 (Mo. App.1989). In determining whether there was a voluntary consent to search, this court may consider such factors as the number of officers present, the degree to which the officers emphasized their authority, whether weapons were displayed, whether the defendant was already in police custody, whether there was any fraud on the part of the officers, the acts and statements of the consenter, and any other matters comprising the totality of the circumstances. *Stolzman*, 799 S.W.2d at 936; *Sanad*, 769 S.W.2d at 438.

On appeal, Mr. Brown insists that Trooper Westfall's request to search was limited to a request to search the vehicle's glove compartment. Mr. Brown argues that, because the actual search exceeded the request to search the glove compartment, his consent was involuntary. However, Mr. Brown's contention ignores the fact that the trial transcript is replete with testimony by Trooper Westfall that he asked for permission to "search the vehicle." Mr. Brown's handwritten statement also provides that Trooper Westfall requested permission to "search the car." The trial court specifically found that Mr. Brown's testimony at trial was incredible and believed Trooper Westfall's testimony.

■ Mr. Brown also argues that his consent merely represented his acquiescence in the inevitable because he believed that Trooper Westfall intended to search his vehicle regardless of whether he consented. However, the evidence reveals that only one officer was present when permission to search was requested, there is no indication that Trooper Westfall overemphasized his authority, no weapons were displayed by the officer, Mr. Brown was not in police custody at the time consent was requested, Trooper Westfall did not commit fraud in seeking Mr. Brown's consent, the incident took place on a public highway, and the incident occurred during a routine traffic stop. Therefore, under the standard established in *Stolzman* and *Sanad*, Mr. Brown's consent was voluntary and not the product of duress, coercion or fraud. Substantial evidence supports the trial court's denial of Mr. Brown's motion to suppress evidence from the search of the vehicle's ash tray. Since Mr. Brown consented to this search, it is not necessary for this court to address his other contentions regarding the search of the ash tray. Point (1) is denied.

For point (2), Mr. Brown contends that the trial court erred in overruling his motion to suppress evidence of any statements made in response to Trooper Westfall's question whether he had "any knives, guns or drugs." Mr. Brown claims that his response, indicating that he had a knife in the glove compartment, was obtained in violation of his privilege against self-incrimination. Mr. Brown contends that Trooper Westfall's questioning was beyond the scope of a routine traffic stop and, therefore, constituted custodial interrogation conducted without previously advising him of his *Miranda* rights. Mr. Brown claims that, due to this allegedly unconstitutional interrogation, all subsequently seized evidence is "fruit of the poisonous tree."

■ Mr. Brown's entitlement to a *Miranda* warning is conditional upon the existence of both custody and interrogation. *Sanad*, 769 S.W.2d at 439. In *Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), the United States Supreme Court stated that "questioning incident to an ordinary traffic stop is quite different from stationhouse interrogation, which frequently is prolonged, and in which the detainee is often aware that questioning will continue until he provides his interrogators the answers they seek." *Id.* at 438, 104 S.Ct. at 3149. In *Berkemer*, the Court concluded, "[t]he ... noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of *Miranda*." *Id.* 468 U.S. at 440, 104 S.Ct. at 3150. *See also Pennsylvania v. Bruder*, 488 U.S. 9, 10, 109 S.Ct. 205, 206, 102 L.Ed.2d 172 (1988); *State v. Pena*, 784 S.W.2d at 885; *State v. Neal*, 682 S.W.2d 860 (Mo.App.1984).

■ The facts of the present case are similar to *United States v. Boucher*, 909 F.2d 1170 (8th Cir.1990) *cert. denied*, —— U.S. ——, 111 S.Ct. 350, 112 L.Ed.2d 314 (1990). In *Boucher*, a member of the Missouri State Highway Patrol observed the defendant speeding on an interstate highway. *Id.* at 1172. The trooper stopped the defendant and proceeded to issue him a traffic citation for speeding. *Id.* While writing the traffic citation, the trooper asked Mr. Boucher whether he had "any weapons, drugs, or large quantities of cash" in his vehicle. *Id.* On appeal, Mr. Boucher claimed that he was in custody at the time that the state trooper asked this question and, therefore, entitled to a *Miranda* warning. *Id.* at 1173–74. The Eighth Circuit held that "[a] reasonable person in Boucher's position would not have considered [the trooper's] questions in the patrol car as custodial interrogation." *Id.* at 1174.

Similarly, Trooper Westfall's question was part of a routine traffic stop. Trooper Westfall's inquiry was merely investigatory questioning, Mr. Brown was not under arrest or otherwise restrained beyond that usually associated with a routine traffic stop. Trooper Westfall's question regarding whether Mr. Brown had "any knives, guns or drugs" was not custodial interrogation and, therefore, Mr. Brown was not

entitled to a *Miranda* warning prior to responding.[1] Point (2) is denied.

▆▆▆ For point (3), Mr. Brown contends that the trial court erred in overruling his motion to suppress evidence of the marijuana found in the automobile's trunk and his handwritten statement concerning that marijuana because the search of his automobile at the Sheriff's Department was not a valid inventory search. Mr. Brown claims that this subsequent search was an invalid inventory search because it was not conducted according to standardized procedures regulating inventory searches. At trial, Trooper Westfall testified regarding State Highway Patrol's procedures for inventory searches but no standardized procedures were introduced into evidence. Mr. Brown apparently contends that, since no standardized procedures were introduced, the search constituted an invalid inventory search.

Inventory searches are a well-recognized exception to the warrant requirement of the Fourth Amendment. *Colorado v. Bertine*, 479 U.S. 367, 371, 107 S.Ct. 738, 741, 93 L.Ed.2d 739 (1987). An exception for inventory searches is recognized because "inventory procedures serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property and to guard the police from danger." *Id.* at 372, 107 S.Ct. at 741. *See also State v. Ferguson*, 678 S.W.2d 873, 877 (Mo.App.1984).

In the present case, Trooper Westfall testified extensively at trial that, pursuant to departmental procedures, he is required to inventory any automobile in his "active possession." Mr. Brown is correct that an actual written procedure authorizing the inventory search was not introduced at trial. However, Trooper Westfall's testimony supports a finding that the search was a valid inventory search and provides substantial evidence to support the trial court's denial of Mr. Brown's motion to suppress evidence of the marijuana found in the automobile's trunk.

▆▆▆ Mr. Brown also complains that the search was unnecessary to protect his property. Mr. Brown points to the fact that the officers merely rolled up the automobile's windows and locked the doors following the search. Mr. Brown argues that, if the purpose of the search was to protect his property, further measures should have been required. However, the protection of Mr. Brown's property is not the only purpose of the inventory search. The search is also intended "to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Bertine*, 479 U.S. at 372, 107 S.Ct. at 741. Additionally, "reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment, even though courts might as a matter of hindsight be able to devise equally reasonable rules requiring a different procedure." *Id.* at 374, 107 S.Ct. at 742. The Missouri State Highway Patrol may, in hindsight, be able to develop greater protections for Mr. Brown's property. However, this court will not, based upon hindsight, invalidate an otherwise lawful inventory search. Point (3) is denied.

The conviction for possession of more than thirty-five grams of marijuana is affirmed.

All concur.

▆▆▆

---

**1.** Mr. Brown relies upon the case of *State v. Myers*, 118 Idaho 608, 798 P.2d 453 (App.1990). However, as discussed in the text of this opinion, the disposition of Mr. Brown's case is controlled by previous opinions of the United States Supreme Court and Missouri's courts. Therefore, *Myers* is not followed in Missouri.