**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 21 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

STEVEN BLAIR SPEAL,

      Defendant - Appellant.

No. 97-3344
(D.C. No. 97-CR-10051-2)
(District of Kansas)

---

**ORDER AND JUDGMENT**[*]

---

Before **ANDERSON**, **KELLY** and **LUCERO**, Circuit Judges.

Steven B. Speal appeals his conviction and sentence for multiple drug and firearms offenses. He challenges the denial of motions to suppress physical evidence and inculpatory statements obtained by police following a traffic stop of the vehicle in which he was traveling. He also alleges it was error to sentence him as a career drug offender. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

# I

Speal's convictions arise from a traffic stop conducted by Trooper Scott Mayfield. Because Latonia Benson, the driver of the stopped vehicle, was unable to produce a driver's license or any valid identification, Mayfield asked her passenger, appellant Speal, for his license in order to determine if he could drive the vehicle. Speal produced an Illinois license in the name "Chris McMillan." However, a computer check yielded no record of an Illinois license issued under that name. A valid Oklahoma license did exist for "Latonia Benson," but Mayfield remained unsure as to whether Benson had correctly identified herself. A concurrent computer check also revealed that the couple's vehicle was registered to Joe Paddock, rather than to John Benson, the person whom Benson claimed as the owner of the car.

As Mayfield issued Benson a ticket, Trooper Mike Geer, newly arrived on the scene, removed Speal to his patrol car for questioning. Informed that a license for Chris McMillan was not "coming up through the State of Illinois," Speal admitted that he had lied about his identity, had numerous prior felony convictions, and had recently been released from jail. IV R. at 87-89. Geer's supervising sergeant then directed Geer to handcuff Speal and read him his Miranda rights. When the sergeant searched Speal, he found $7,000 in his pockets. And, after Benson agreed to a search of the vehicle, Mayfield also

discovered multiple guns and two garbage bags filled with marijuana. A later inventory search revealed a quantity of methamphetamine as well.

Speal was ultimately convicted of conspiracy to distribute a controlled substance in violation of 21 U.S.C. § 846; possession with intent to distribute methamphetamine and marijuana in violation of 21 U.S.C. § 841(a)(1); possession of a firearm during a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1); and two counts of possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He was sentenced to life imprisonment without possibility of parole.

## II

We decide, first, that Speal is without standing to challenge the search of the vehicle. To have standing, a party must have an objectively reasonable, subjective expectation of privacy in the area searched. See Smith v. Maryland, 442 U.S. 735, 740 (1979). Under this standard, "a 'passenger qua passenger' has no reasonable expectation of privacy in a car in which he asserts neither a property interest nor a possessory interest and where he disclaims any interest in the seized object." United States v. Jefferson, 925 F.2d 1242, 1249 (10th Cir. 1991) (citing Rakas v. Illinois, 439 U.S. 128, 148-49 (1978)).

In this case, Speal neither owned the vehicle nor did he have permission from the owner to use it. In addition, he failed to object to or attempt to limit the search. Although Benson stated that some of the clothes in the vehicle belonged

to Speal, that is insufficient to establish a reasonable expectation of privacy in the vehicle. Nor, given Speal's failure to present evidence that he owned the contraband, is the presence of Speal's fingerprints on a bag of marijuana.[1]

## III

Although Speal cannot challenge the vehicle search, he can challenge the vehicle stop and his own detention. See United States v. Eylicio-Montoya, 70 F.3d 1158, 1164 (10th Cir. 1995); United States v. Erwin, 875 F.2d 268, 270 (10th Cir. 1989). Nonetheless, we affirm the district court's findings that the vehicle stop and Speal's detention in Geer's patrol car for questioning were both proper.

## A

A traffic stop is analogous to an investigative detention. See United States v. Shareef, 100 F.3d 1491, 1500 (10th Cir. 1996). To be legal, the stop must be justified at its inception and the subsequent detention "reasonably related in scope to the circumstances which justified the interference in the first place." Terry v. Ohio, 392 U.S. 1, 20 (1968). Under these principles

---

[1] Were we to assume that Speal has standing to challenge a search of his clothing, the result in this case would be no different. Consent to search a car is consent to search the whole car and whatever is in it, unless such consent has been limited. See United States v. Elliott, 107 F.3d 810, 814-15 (10th Cir. 1997). As neither Benson nor Speal attempted to limit the terms of consent, the entire search was validated by Benson's voluntary consent. See United States v. McRae, 81 F.3d 1528, 1537-38 (10th Cir. 1996).

> an investigative detention may be expanded beyond its original purpose . . . if during the initial stop the detaining officer acquires "reasonable suspicion," of criminal activity, that is to say the officer must acquire a "particularized and objective basis for suspecting the particular person stopped of criminal activity.". . . We have noted that "[o]ne recurring factor supporting a finding of reasonable suspicion. . . is the inability of a defendant to provide proof that he is entitled to operate the vehicle he is driving."

United States v. Villa-Chaparro, 115 F.3d 797, 801-802 (10th Cir. 1997) (internal citations omitted). "The government has the burden of demonstrating that the seizure it seeks to justify on the basis of a reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure." United States v. Perdue, 8 F.3d 1455, 1462 (10th Cir. 1993) (quoting Florida v. Royer, 460 U.S. 491, 500 (1983)).

Under these standards, the vehicle seizure and Speal's investigative detention in Geer's patrol car were proper. Mayfield properly initiated the stop after witnessing Benson attempt an illegal U-turn. See Whren v. United States, 116 S.Ct. 1769, 1772 (1996) (automobile stop is reasonable if police have probable cause of traffic violation). He properly continued the detention of the car and its occupants in light of Benson's lack of identification or license, Speal's unverifiable license, questions about vehicle ownership, the couple's inconsistent stories about the purpose of the trip, the early hour, and the chosen route—one along which guns and drugs are often transported. Because Benson could not produce a license or identification, Mayfield's inquiry of Speal as to whether he

could legally drive or prove the couple was authorized to use the vehicle was reasonable. See United States v. Alvarez, 68 F.3d 1242, 1244-45 (10th Cir. 1995) (officer may pose questions to vehicle passengers during traffic stop to determine lawful possession of vehicle); see also United States v. Kopp, 45 F.3d 1450, 1453-54 (10th Cir. 1995) (assuming that officer may question passenger concerning the destination of trip and noting that inconsistency in stories supports a finding of reasonable suspicion).

Speal's relocation to the front seat of Geer's vehicle does not effect a different result. "[T]he intrusiveness of a search or seizure will be upheld if it was reasonable under the totality of the circumstances. . . . Reasonableness is determined by balancing the governmental interest in crime prevention against the citizen's right to be free from governmental intrusion." United States v. Perdue, 8 F.3d 1455, 1462 (10th Cir. 1993) (citing Terry, 392 U.S. at 19-21). In relocating Speal, Geer justifiably protected himself from any weapons concealed in the couple's vehicle. See Maryland v. Wilson, 117 S.Ct. 882, 886 (1997) (removal of a passenger from vehicle for security and safety reasons is legitimate during a Terry stop). In addition, separating Benson and Speal served to limit their opportunity to devise a consistent explanation for the trip. And relocation to the patrol car as opposed to the highway median strip offered protection from chilly, windy weather and highway traffic.

We do not suggest that detention in a police car never exceeds the reasonable parameters of a Terry stop. To the contrary, courts have repeatedly found that when the intrusiveness of a stop outweighs the legitimate needs of law enforcement officers, such detention is invalid. See, e.g., Washington v. Lambert, 98 F.3d 1181, 1183-85, 1192 (9th Cir. 1996) (finding that two suspects confronted by four officers and a drug dog, ordered out of their vehicle at gunpoint, handcuffed, and placed into separate police cars for five to twenty-five minutes were subject to arrest not Terry stop); United States v. Richardson, 949 F.2d 851, 857-58 (6th Cir. 1991) (holding that police implemented arrest rather than investigative detention when they placed defendant who had refused to grant consent to search of storage locker in back seat of patrol car and questioned him without probable cause either to make an arrest or obtain a search warrant); United States v. Ricardo D, 912 F.2d 337, 340 (9th Cir. 1990) (finding that police who isolated an unarmed, compliant juvenile in the back of a police car without justification, utilized unnecessary coercion, thereby transforming an investigatory stop into an arrest). But such cases do not establish a per se rule against the investigative detention of a passenger in a patrol car. The Supreme Court has explicitly rejected the idea of a "bright line" rule for differentiating between proper and improper investigative detentions, finding instead that common sense and ordinary human experience must govern over rigid criteria. See United

States v. Sharpe, 470 U.S. 675, 685 (1985).  The validity of a Terry stop must be assessed on the facts and surrounding circumstances of the case, see United States v. Muldrow, 19 F.3d 1332, 1335 (10th Cir. 1994) (citing United States v. Cooper, 733 F.2d 1360, 1364 (10th Cir 1984)).  In this case, such facts and circumstances are sufficient to establish the reasonableness of relocation.

**B**

Similarly, we cannot credit Speal's assertion that his statements to Geer should be suppressed as violative of Miranda's strictures.  "[T]wo requirements must be met before Miranda is applicable; the suspect must be in 'custody,' and the questioning must meet the legal definition of 'interrogation.'" Perdue, 8 F.3d at 1463.  Viewing the evidence in the light most favorable to the government, see Lambert, 46 F.3d at 1067, we find that Speal was not subject to "custodial interrogation" when he made his pre-Miranda statements, and so Miranda warnings need not have preceded them.  See Miranda v. Arizona, 384 U.S. 436, 444 (1966).

A person is "in custody" when he has been arrested or his freedom is curtailed to a degree associated with a formal arrest.  See Stansbury v. California, 511 U.S. 318, 322 (1994) (per curiam); California v. Beheler, 463 U.S. 1121, 1125 (1983) (per curiam).  The relevant inquiry for determining whether an individual is "in custody" is whether a reasonable person in that position would

"believe her freedom of action had been curtailed to a 'degree associated with formal arrest.'" United States v. Griffin , 7 F.3d 1512, 1518 (10th Cir. 1993) (quoting Beheler , 463 U.S. at 1125, and Berkemer , 468 U.S. at 440). Generally, the questioning that occurs during a traffic stop requires no Miranda warnings, see Martinez , 983 F.2d at 976 (citing Berkemer , 468 U.S. at 442), because such police-citizen encounters are brief, non-threatening, and conducted in the presence of others. See Berkemer , 468 U.S. at 438-39.

During a traffic stop, however, law enforcement officials may create the custodial interrogation that Miranda contemplates "by employing an amount of force that reache[s] the boundary line between a permissible Terry stop and an unconstitutional arrest." Perdue , 8 F.3d at 1464. We therefore review the totality of the circumstances to determine whether the force employed during the traffic stop and prior to Speal's formal arrest created a "custody" situation under Miranda . See United States v. Torres-Guevara , 147 F.3d 1261, 1266 (10th Cir. 1998). We review the circumstances relating to the questioning process, such as whether a suspect is informed that he or she may refuse to answer questions or terminate the encounter, the tone and manner of the questioning, and the separation of an individual from sources of moral support during questioning. See Griffin , 7 F.3d at 1518-19. We also consider the degree of restraint placed upon the suspect being questioned, including whether the suspect is physically

-9-

restrained or coerced, see Martinez , 983 F.2d at 977, whether the suspect's driver's license or automobile registration is retained, see Hernandez , 93 F.3d at 1499, and whether there is a threat of physical restraint created by an officer's display of a weapon. See Griffin , 7 F.3d at 1519.

Although this circuit has never before considered whether the questioning of a suspect in a police car following a legitimate traffic stop should necessarily be considered custody for Miranda purposes, other circuits have considered the issue and declined to create a per se rule. See, e.g. , United States v. Manbeck , 744 F.2d 360, 378 (4th Cir. 1984) (refusing to recognize a rule that all detentions in a patrol car are "per se arrests," and instead holding that where "the manner in which [the suspect is] detained lacks most of the trappings of the formal arrest and is fully consistent with an investigative stop," questioning in a police car should be analyzed as a routine Terry traffic stop and not as a Miranda custodial

interrogation). [2] We therefore consider Speal's relocation to the police car as one factor in our determination of whether he was in custody.

Based on the totality of circumstances, we find that Speal was not in custody during his pre- Miranda detention in Geer's patrol car. There is no evidence of coercion by Geer; rather, Geer informed Speal that he had been unable to verify the Illinois license and simply asked if Speal had any other identification. In response, Speal volunteered his real identity and background information. The conversation took place in the front seat of the patrol car on the shoulder of a public highway during the day, and was not excessive in duration. Speal was not handcuffed. He could see his companion from his seat in the patrol car, and had previously witnessed Mayfield question and then release Benson, thus creating a reasonable expectation that he too would be released. Finally, protection from highway traffic and windy, chilly conditions further justify his relocation to the patrol car. See Manbeck , 744 F.2d at 379

---

[2] See also United States v. Baker, 78 F.3d 1241, 1244-45 (7th Cir. 1996), cert. denied, 117 S.Ct. 1720 (1997) (where suspect sitting in officer's patrol car without being under arrest, "there was no need to give him Miranda warnings"); United States v. Boucher, 909 F.2d 1170, 1174 (8th Cir. 1990) ("Miranda warnings are not imposed because the questioning is conducted in a certain place, i.e., a patrol car."); United States v. Parr, 843 F.2d 1228, 1231 (9th Cir. 1988) (holding that placing a suspect in a patrol does not constitute an arrest for Miranda purposes). All of these cases found that the suspect was not in Miranda custody given the totality of the circumstances. See Baker, 78 F.3d at 1244-45; Boucher, 909 F.2d at 1173-74; Parr, 843 F.2d at 1231; Manbeck, 744 F.2d at 374-80.

(holding that relocation to a police car for questioning due to inclement weather is a reason that mitigates against "whatever coercive elements are otherwise normally attendant [to a police car inquiry]"). Consequently, Speal's statements made in the patrol car prior to his formal arrest should not have been suppressed.

**IV**

We also reject Speal's assertion that the court erred or abused its discretion in sentencing him to life imprisonment without the possibility of parole. We review a district court's factual findings at sentencing for clear error and its legal conclusions de novo. See United States v. Cuthberson, 138 F.3d 1325, 1326 (10th Cir. 1998) (citing United States v. Pappert, 112 F.3d 1073, 1078 (10th Cir. 1997)). The government bears the initial burden of showing, by a preponderance of evidence, that a given sentence is appropriate. See United States v. Rutter, 897 F.2d 1558, 1560 (10th Cir. 1990). Speal's sentence was enhanced pursuant to U.S.S.G. § 4B1 because of his status as a career offender who had two prior felony drug convictions. Speal asserts that this enhancement was improper because the two drug convictions should have been viewed as a consolidated, single conviction. We disagree.

Sentences are related if they result from offenses that (1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing. See United States v. Guerreo-Hernandez, 95

-12-

F.3d 983, 986-87 (10th Cir. 1996). Sentences imposed in unrelated cases are counted separately. See id. at 986. Speal was arrested on October 31, 1989, for possession with intent to distribute marijuana. He was also arrested on December 2, 1990, for possession with intent to distribute marijuana. Speal was convicted of both offenses. They occurred on different occasions, and the record does not establish that they were consolidated or committed as part of a common plan. See United States v. Ciapponi, 77 F.3d 1247, 1252 (10th Cir. 1996).

Nor did the sentencing court abuse its discretion when it sentenced Speal to a lengthy prison term that exceeded the one his co-defendant received. We review the propriety of disparate sentences under an abuse of discretion standard. See United States v. Massey, 48 F.3d 1560, 1570 (10th Cir. 1995). The mere fact that co-defendants receive disparate sentences does not in itself constitute an abuse of discretion. See United States v. Trujillo, 906 F.2d 1456, 1465 (10th Cir. 1990) (citation omitted). Speal has an extensive criminal history and was apprehended with large quantities of drugs and multiple firearms. His co-defendant lacks a comparable criminal history, and the imposition of disparate

sentences is therefore permissible.

**AFFIRMED.**

ENTERED FOR THE COURT


Carlos F. Lucero
Circuit Judge